STATE OF HAWAII, Plaintiff-Appellant *v.* WALTER LOUIS JOAO, JR., Defendant-Appellee

NO. 5503

JULY 26, 1974

RICHARDSON, C.J., LEVINSON, KOBAYASHI, MENOR, JJ., AND CIRCUIT JUDGE T. SODETANI IN PLACE OF OGATA, J., DISQUALIFIED

OPINION OF THE COURT BY MENOR, J.

This appeal is taken from a circuit court order granting the defendant's motion to suppress as evidence a .22 caliber

automatic pistol, which the State sought to introduce in the defendant's trial for carrying a concealed weapon without a permit in violation of HRS § 134-9 (Supp. 1973).

The pertinent facts here are derived from the testimony of Police Officer Joel Wong, the sole witness at the suppression hearing. Officer Wong testified regarding the tip that led to the stop and subsequent arrest of the defendant as follows:

> Well, the day before, which was January 20, 1973, at about 11 o'clock p.m. at night, I met with a person known to me as a very reliable informant; and this person told me that Walter Joao was carrying a .22 caliber automatic pistol and that he carried it with him whenever he's in Waikiki and traveling around in the town area.

The unidentified informant's tip, however, did not inform the officer as to the defendant's present whereabouts. Moreover, while the informer told of having actually seen the gun, he did not say when he had seen it and the officer did not ask. The officer did not think he had sufficient information to obtain a search warrant, and therefore decided to go about his routine patrol duties, while at the same time keeping a lookout for the defendant. It was his expressed intention upon locating the defendant "to stop him and frisk him, not search him."

Officer Wong received the tip at 11:00 p.m. At 4:00 a.m., approximately five hours later, while routinely patrolling the Waikiki area with three other officers in plainclothes, he spotted the defendant driving out of the International Market Place parking area with two female passengers. The officers followed the defendant's car for several blocks before identifying themselves as police officers and instructing the defendant to stop his car. After the stop, Officer Wong asked the defendant to get out of his car and onto the sidewalk. The officer again identified himself and proceeded to frisk the defendant. In the course of the frisk, a pistol was discovered and the defendant was subsequently arrested for carrying a concealed weapon without a permit. Prior to the stop the officers had observed no illegal or suspicious conduct on the part of the defendant.

We are not here dealing with probable cause for an arrest

or a search. *See Aguilar v. Texas*, 378 U.S. 108 (1964); *Spinelli v. United States*, 393 U.S. 410 (1969); *State v. Austria*, 55 Haw. 565, 525 P.2d 580 (1974); *State v. Davenport*, 55 Haw. 90, 516 P.2d 65 (1973); *State v. Texeira*, 50 Haw. 138, 433 P.2d 593 (1967). At issue is the conduct of a law enforcement officer within the context of the "stop and frisk" doctrine, and the question before this court is whether an unnamed informer's unverified tip will support a stop and frisk. We hold that in this case it cannot.

In *State v. Onishi*, 53 Haw. 593, 595, 499 P.2d 657, 659 (1972) we expressly noted that the guidelines for determining the constitutional validity of stop and frisk by law enforcement officers were to be found in *Terry v. Ohio*, 392 U.S. 1 (1968); *Sibron v. New York*, 392 U.S. 40 (1968); and *Adams v. Williams*, 407 U.S. 143 (1972). While these cases permit a police officer, under very limited circumstances, to stop and frisk an individual on the basis of reliable information short of probable cause, they do not go so far as to hold that a law enforcement officer may use unreliable, unsubstantiated, conclusory hearsay to justify an invasion of an individual's liberty.

With these cases before us, we held in *Onishi* that in order for a police officer to conduct a valid stop and frisk, he must have observed specific conduct on the part of the person whom he is about to frisk, or have reliable information, from which he may reasonably infer that criminal activity is afoot and that the perpetrator is armed and presently dangerous. The test in these situations must be, as we pointed out in *Onishi*, whether the facts known by the officer, judged against an objective standard, would warrant a man of reasonable caution to believe that the action taken was appropriate. *See Terry v. Ohio, supra.*

The police officer here observed no unusual or suspicious conduct on the part of the defendant prior to stopping and frisking him. The defendant was driving his vehicle in a lawful manner; he did nothing from which the officer could reasonably infer that he was about to commit any offense, and nothing in his conduct suggested that he was carrying a weapon.

Nevertheless, the police seek to justify their actions exclusively on the basis of information received from an unnamed and unidentified individual, whose tip consisted of nothing more substantial than the assertion that whenever Walter Joao was in Waikiki he carried a firearm. Though the informer indicated, according to the officer's testimony, that he knew this from personal observations, he gave absolutely no indication as to whether these observations had been made immediately prior to the tip or some weeks, or even months earlier. Without an adequate anchor, as to time and place, the reliability of this information becomes greatly attenuated. Even so, the State urges that the reliability of the information can be sufficiently sustained inasmuch as the informer himself was "a person known [to the officer] as a reliable informant." However, the officer's testimony merely states this critical factor as a conclusion. Without more, this bald assertion cannot resurrect information of otherwise questionable reliability.

As in *State v. Goudy*, 52 Haw. 497, 479 P.2d 800 (1971), the tip from an informer triggered the chain of events which led to the stopping and subsequent frisking of the defendant. In *Goudy*, however, the anonymous phone call was but one factor in the totality of circumstances which enabled this court in that case to find the requisite degree of reasonableness in the officers' conduct. Unlike *Goudy*, the information received by the officer here was the sole justification for the stop and frisk.

Hearsay information must of necessity require careful consideration of its source of origin. To restate the obvious, a tip is only as good, or as worthless, as its source. It stands to reason, for example, that an identified informer would generally be entitled to greater credibility than a "faceless" informer would be.

In every case, it is for the court to assess the reliability of the information received, considering the totality of the circumstances, including the source and the nature and substance of the information itself. To enable the court to judge objectively the reasonableness of the officer's conduct, it must have before it specific and articulable facts from which

 

to make this determination. *State v. Onishi, supra.* This was the mandate of *Terry:*

> [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. 392 U.S. at 21.

The unidentified informant's tip being the only real basis for his actions, it was incumbent upon the officer to relate credibly to the trial court specific and articulable facts from which that tribunal could determine whether a man of reasonable caution would have been justified in relying solely upon it. The police officer here has failed to comply with this requirement. It was not enough that he received his information from "a person known [to him] as a reliable informant." This was no more than an assertion of informer reliability, for which no adequate factual foundation was adduced.

The State, however, argues that the officer, additionally, had knowledge of the defendant's reputation for carrying a gun. On this particular point Officer Wong testified:

> Well, just, you know, shop talk. You know, talking about guys who were informed by, you know, their informers, that Joao was, you know, has a reputation of carrying a gun and things like that. However, it's all, you know, hearsay from somebody else.

*Onishi* is dispositive of this argument. In that case we noted:

> Insofar as the record is concerned, Borges had no prior encounter with Onishi. He had not previously arrested him. Borges testified that he frisked Onishi because he had knowledge that Onishi was a dangerous person and on occasion carried pistols. But he did not point to any particular facts upon which he based that statement. A reading of his testimony shows that his "knowledge" regarding Onishi was no more than a conclusion he reached from the information given by Detective Trepte. 53 Haw. at 599.

Affirmed.

*Reina A. Grant,* Deputy Prosecuting Attorney *(Barry Chung,* Prosecuting Attorney, of counsel) for plaintiff-

appellant.

*David C. Schutter* for defendant-appellee.

DISSENTING OPINION OF RICHARDSON, C.J.

I dissent.

I would reverse the trial court's granting of the motion to suppress evidence seized from defendant-appellee Walter Joao, because I believe that the search and subsequent seizure were reasonable under the circumstances in this case.

The majority recognizes the principle that a police officer may, in an appropriate manner, stop a person for investigation of possible criminal behavior on the basis of information not sufficient to constitute probable cause to make an arrest. *Terry v. Ohio*, 392 U.S. 1, 22 (1968). The majority correctly states that the issue in this case is whether the unidentified informant's tip was sufficiently reliable to justify Officer Wong's stopping the defendant. Because the stopping was a seizure of the defendant's person, if this initial intrusion was unreasonable, the subsequent frisk was also unreasonable.

However, I dissent from the majority opinion for the same reason that I dissented from the opinion of this court in *State v. Onishi*, 53 Haw. 593, 499 P.2d 657 (1972), my belief that the majority has misconstrued the intent of Justice Rehnquist in *Adams v. Williams*, 407 U.S. 143, 145-146 (1972):

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry [supra]* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. (Citations omitted.)

The Court stated that although the informant's unverified tip in *Adams v. Williams, supra,* may have been insufficient for a search warrant, it carried sufficient indicia of reliability to

justify a forcible stop of the defendant.

In so holding, the Court implicitly rejected as inappropriate for street encounters the test it had propounded in *Aguilar v. Texas,* 378 U.S. 108 (1964), to determine whether an informant's tip was sufficiently reliable to support probable cause for arrest or issuance of a search warrant. Instead, the Court would permit a reduced standard of reliability for street encounters, and would test it on a case-by-case basis:

> One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations . . . the subtleties of the hearsay rule should not thwart an appropriate police response. *Adams v. Williams, supra,* 407 U.S. at 147.

In *Adams v. Williams, supra* at 146, 147, the Court identified three indicia of reliability which were sufficient to justify a forcible stop of the defendant: First, the informant was "known . . . personally" to the officer and had "provided him with information in the past"; second, the informant came forward with "information that was immediately verifiable at the scene;" and finally, that the informant would have been criminally liable for giving a false tip.

In the instant case, the informant was known to Officer Wong personally and had provided him with information in the past. Under HRS § 710-1015,[1] a similar statute to that involved in *Adams v. Williams, supra,* the informant would have been subject to false arrest for making a false report to Officer Wong. Although the information was not immediately verifiable at the scene at the time it was given to Officer Wong, from his personal knowledge and from intelligence type information from other police officers and their informants, he was able to recognize the defendant and was aware that the defendant had a reputation for carrying a gun. In

---

[1] HRS § 710-1015 *False Reporting to Law-Enforcement Authorities.*

(1) A person commits the offense of false reporting to law-enforcement authorities if he intentionally makes a report or causes the transmission of a report to law-enforcement authorities relating to a crime or other incident within their concern when he knows that the information contained in the report is false.

(2) False reporting to law-enforcement authorities is a misdemeanor.

*United States v. Harris*, 403 U.S. 573, 583 (1971), the Supreme Court held that a policeman may properly rely on his knowledge of a suspect's reputation in assessing the reliability of an informant's tip.

The majority would not rely on Officer Wong's conclusory assertion in this case that the informant was very reliable. Nevertheless, the Fourth and Tenth Circuits have recently accepted an officer's assertion of previous reliability as sufficient under *Adams v. Williams, supra,* to justify an investigatory stop. *United States v. Jefferson,* 480 F.2d 1004, 1006 (4th Cir.), *cert. denied,* 414 U.S. 1001 (1973); *Stone v. Patterson,* 468 F.2d 558, 560 (10th Cir. 1972).

As to the quantum of information possessed by Officer Wong, he was told that the defendant carried a .22 caliber automatic pistol fitted for a silencer whenever "he's in Waikiki or traveling around the town area." Although the informer had actually seen the gun, he was unwilling to state when or under what circumstances he had observed the gun. Officer Wong properly recognized that this amount of information was insufficient to obtain a search warrant. Nevertheless he properly believed he had reasonable cause to justify a stop of the defendant to further investigate, should he encounter the defendant during his routine patrol of Waikiki.

Interpreting the above circumstances in the light of *Adams v. Williams, supra,* I believe the information was sufficient and carried enough indicia of reliability to justify Officer Wong's stop of the defendant. Having concluded that the stop in this case was reasonable, I turn to a discussion of the reasonableness of the search.

In *Terry v. Ohio, supra,* 392 U.S. at 24, 30, the Court recognized that a policeman making a reasonable investigatory stop of an individual who he believes to be armed and dangerous should be permitted to conduct a limited protective search for concealed weapons. In the instant case, Officer Wong had reasonable cause to suspect that the defendant was armed and dangerous. At the hearing on the motion to suppress he described his protective search of the defendant:

I identified myself as a police officer and started to frisk

him. As I started to go towards his — to start the frisk, towards his shoulder area, he sort of stepped back. He put his hands up in the air and stated words, "I get one, I get one." Then I started my frisk; and in the area of his right waistband, I felt an object which felt like a pistol which was tucked inside the waistband of his trousers.

When the defendant stated "I get one, I get one," Officer Wong's action in continuing his search to insure his safety was reasonable. Once Officer Wong found the gun that the informant had described, probable cause existed to arrest the defendant for unlawful possession of the weapon.

I believe that the search in the instant case was reasonable and therefore that the circuit court erred in suppressing the fruits of the search.