STATE OF HAWAII, Plaintiff-Appellee, *v.* JAMES M. MOORE, Defendant-Appellant

NO. 7920

D.C. NOS. D4-1-2172
and D4-1-2192

FEBRUARY 18, 1983

LUM, ACTING C.J., NAKAMURA, J.,
RETIRED JUSTICES OGATA AND MENOR,
ASSIGNED TEMPORARILY*

*Per Curiam.* The defendant was convicted of the offenses of promoting a detrimental drug in the second degree, under HRS § 712-1248(1)(c), and of defacing a motor vehicle serial number, under HRS § 286-44. He appeals from the judgment and sentence of the trial court. No question is raised as to the sufficiency of the evidence. At issue is whether the trial court erred in refusing to suppress evidence obtained by the police in alleged violation of the defendant's constitutional rights.

Officer Joseph Natividad was on a routine patrol of Hoomaluhia State Park during daylight hours when he came upon the defendant's Volkswagen automobile which was standing on the park driveway, approximately fifty feet inside the main park entrance. This was the only vehicle parked there. The

---

* Chief Justice Richardson, who heard oral argument in this case, retired from the court on December 30, 1982. HRS § 602-10 (1982 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

park was then undergoing construction work and had been closed to the public. There was a sign posted at the entrance warning against people trespassing into the area. The gate was closed but not locked when the officer reached the area and saw the defendant's vehicle. He walked up to the Volkswagen and found its windows rolled up and the doors locked. No one was near the vehicle at the time. Neither did the officer see anyone in the vicinity. Regarding his conduct thereafter, the officer testified:

A I approached the vehicle to check if it was occupied, which it wasn't, and I ran the license number on the vehicle to find out if it had been reported stolen or abandoned.

Q And what else did you do?

A I also checked to see if - I lifted the engine hood to check to see if any of the engine parts were stolen and, at which time, I noticed the motor number on the end had punch marks.

Q Now, upon investigating a vehicle that is trespassing or is in a position of trespassing, what is the customary police procedure in checking out the vehicle?

A Well, in that area, we have problems with vehicles being abandoned and stolen vehicles being dumped in that area. So we check the identification of the vehicles, the license plates, the VIN in it, check if any of the missing - any parts of the engine is gone.

Q And did you testify that you lifted the hood of the vehicle?

A Yes, ma'am.

Q And what was your observation?

A I looked at the engine. I could tell that the motor number on the engine block, which faces outside, was with punch marks and it was the first four digits of the motor number.

Q How did the motor number appear?

A The numbers were legible if you look good at it but the punch marks with the numbers on it - it appeared that a sharp-pointed instrument had been put on the numbers and punched in.

Q Now, what did you do upon making that observation?

A I ran the serial number through the computer to find if the motor had been reported stolen and it came out negative results.

Q Now, what happened after you had done this?

A I took the vehicle into custody for defaced serial number.

As a result of the officer's discovery of the defaced engine numerals, he impounded the car and had it towed to the Kailua police station. This was done without the consent of the defendant who, prior to his car being towed away, had been found standing in some tall grass nearby and brought back to the scene by the officer. He had apparently been watching the officer while the latter was inspecting his vehicle. He was asked by the officer to report to the station.

When the defendant arrived, the contents of the Volkswagen were already being inventoried by the police. Among the items removed from the car and placed on the ground for that purpose was a closed brown paper bag. It was about this time that Officer Natividad decided to place the defendant under arrest for the defaced serial number violation. The defendant, however, suddenly grabbed the brown paper bag and fled with two officers in hot pursuit. He was still carrying the bag when he turned the corner, but when he was apprehended shortly thereafter he was no longer in possession of the article. A search along the defendant's line of flight revealed the package, or one similar to it, in a garbage can standing near the sidewalk. The bag was opened and was found to contain three plastic bags of marijuana. Another plastic bag containing contraband was also later discovered in the vehicle's glove compartment when the inventory of its contents was resumed.

The determinative question in this case is, whether Officer Natividad was justified in opening the hood of the defendant's car as a result of which the defaced serial numbers came into the officer's view.

There appears to be a difference of judicial opinion as to whether police inspection of a motor vehicle's identification number which is not in plain view and which is located within the vehicle constitutes a search within the meaning of the Fourth Amendment. *See United States v. Powers,* 439 F.2d 373, 374 (4th Cir. 1971), *cert. denied,* 402 U.S. 1011. But even

those courts which hold that it is not a search have seen fit to impose certain limitations. Thus, in *Cotton v. United States,* 371 F.2d 385, 393 (9th Cir. 1967), the court said that while it did not consider the examination to be a search, it would nevertheless limit the right to check to those cases in which there was a legitimate reason for the police to do so.

In *State v. Agnasan,* 62 Haw. 252, 614 P.2d 393 (1980), this court appeared to take the view that checking an engine number which is located inside the vehicle does constitute a search within the intendment of the Fourth Amendment and of the search and seizure provisions of the Hawaii Constitution. We confirm this view. *See Simpson v. United States,* 346 F.2d 291 (10th Cir. 1965). The inspection in *Agnasan* was upheld by this court because the circumstances known to the searching officer at the time were such as to justify a reasonable belief that the automobile had been stolen.

We do not have that situation here. By his own admission, the officer had no reason to suspect that a crime involving the Volkswagen had been committed. And despite the trial court's reliance upon the theory of abandonment, the evidence and the testimony of Officer Natividad were clearly to the contrary. In this connection, the officer testified:

Q BY MR. FUKUHARA: Isn't it true that the only reason you had for lifting the hood and search the contents in it was a suspicion that it might be an abandoned car?

A No, I lifted the hood of the engine to check to see if any parts were missing from the engine.

Q But did you have any reason to suspect that there was any crime?

A No, sir.

Q That, for example, it was abandoned before you lifted the hood?

A No, sir.

Q So the real reason that you searched under the hood was because the car happened to be parked there, isn't that correct?

A Yes, sir.

In *State v. Elliott,* 61 Haw. 492, 605 P.2d 930 (1980), this court held that in order for a warrantless search of an automobile to be upheld, the officer must have had probable cause to

believe that evidence of crime was located in the area sought to be searched and that exigent circumstances required that the search be conducted without undue delay. This court also reaffirmed the established principle that the circumstances justifying a warrantless search must be those which obtained at the time the search was initiated.

There were no such circumstances in the present case. Accordingly, we reverse and remand for appropriate action consistent with this opinion.[1]

Reversed and remanded.

*Juliette Sarmiento* and *Keith M. Kiuchi,* Deputy Public Defenders, on the briefs for defendant-appellant.

*Christine Kurashige,* Deputy Prosecuting Attorney, on the brief for plaintiff-appellee.

---

[1] The contraband which was recovered following the car's impoundment must, of course, also be suppressed. The "fruits of the poisonous tree" doctrine would preclude their use as evidence against the defendant. Wong Sun v. United States, 371 U.S. 471 (1963).