STATE OF HAWAII, Complainant-Appellee, *v.* GREGG B. PHILLIPS, Defendant-Appellant

NOS. 9426 & 9427

(CRIMINAL NOS. CR5 & CR4)

FEBRUARY 28, 1985

NAKAMURA, ACTING C.J., PADGETT, HAYASHI, AND WAKATSUKI, JJ., AND INTERMEDIATE APPELLATE COURT CHIEF JUDGE BURNS, IN PLACE OF LUM, C.J., EXCUSED

OPINION OF THE COURT BY NAKAMURA, J.

Gregg B. Phillips was convicted in the District Court of the First Circuit of carrying a loaded firearm in a vehicle on a public highway in violation of Hawaii Revised Statutes (HRS) § 134- 6 and of carrying a deadly weapon concealed within a vehicle occupied by him in violation of HRS § 134- 51, and he appeals. The dispositive question is whether the warrantless search of his vehicle and the seizure of the firearm were valid. Concluding the search was conducted without probable cause, we vacate the convictions and remand the cases to the district court.

I.

At 11:37 p.m. on November 2, 1982, an unknown caller telephoned the Honolulu Police Department, complaining that an unidentified male brandishing a stick was threatening people at the Lanikai Boat Ramp. The caller further apprised the police of the color, make, and license plate number of the alleged culprit's motor vehicle. The foregoing information was promptly relayed to police officers in the vicinity of Lanikai. Six officers stationed at the Kailua Police Station rushed to the scene of the reported offense. Officers David Medina and Thomas Carreiro arrived within minutes, shortly before the others. Upon arrival, the two officers observed "three vehicles parked facing the ocean in regular parking stalls and some males and females standing around the cars just talking." Transcript, June 23, 1983, at 6. They also saw another vehicle, whose make and license plate number corresponded with information given them earlier that the offender's vehicle was an MG with a particular number, at the far end of the parking lot.

The two officers drove up to the MG in their vehicle, alighted, and approached the lone occupant of the MG, the defendant, from opposite sides. As Carreiro neared the defendant he observed the car's motor was running, but noted nothing that seemed out of the ordinary. As Medina drew close he saw a sheathed diver's knife on

the front passenger seat. He immediately grabbed the knife and informed Carreiro, who was already speaking to the defendant, of the seizure.

Carreiro thereupon asked the defendant to step out of the vehicle. The defendant, however, appeared reluctant to comply with the request. So the officer unlatched the car door and held it open to indicate the request was more a command. Seeing he had no choice in the matter, the defendant stepped out and stood at the open door. Carreiro then went to the rear of the car and ordered the defendant to follow him. But the defendant did not budge until Medina grabbed him by the arm and told him to move away from the door to enable the officer to "look inside." Meanwhile, Carreiro observed the defendant was wearing a garment that resembled a bulletproof vest under his shirt. The officer's suspicion in this regard was confirmed after the defendant moved to the rear of the vehicle, and Carreiro disclosed this fact to the other officer.

When the defendant stepped away from the door, Officer Medina positioned himself there, leaned over, and peered into the interior of the vehicle. He saw a bulky black object with a glint of silver or chrome under the driver's seat. Although part of the object was visible, Medina had no idea what it actually was. He nevertheless seized the object; it turned out to be a loaded handgun, the butt of which was wrapped in a pair of weighted gloves. Officer Carreiro then conducted a "pat-down" of defendant's clothing and a search of the vehicle. But no other weapon or any contraband was found.

The other four officers reached the scene shortly; and when the ranking officer in the group was given an account of what transpired before their arrival, Medina was instructed to place Phillips under arrest. Apparently, he was arrested and booked for violations of three sections of HRS Chapter 134, § 134-3, § 134-6, and § 134-51.[1] But when arraigned before the district court, he was orally charged with acquiring a firearm "without first obtaining ... a permit to acquire [the] firearm, in violation of Section 134-4" and

---

[1] HRS § 134-3 is entitled "Permits to acquire; penalty," § 134-6 is entitled "Place to keep firearms; loaded firearms, when prohibited," and § 134- 51 is entitled "Carrying deadly weapons; penalty."

with "carry[ing] concealed within [a] vehicle . . . a pistol, [in] violation of Section 134-51."

The defendant moved before trial to suppress "all items . . . seized by the Honolulu Police Department on or about November 2, 1982 on . . . grounds . . . that such evidence was . . . seized in violation of [his] rights under the . . . United States Constitution and the . . . Hawaii State Constitution." The hearing on the motion was consolidated with the trial by the district court. After listening to the testimony of Carreiro, Medina, and Phillips the trial judge denied the motion. In his view there was sufficient cause to search the car and seize the gun.[2] And he subsequently convicted the defendant of violations of HRS §§ 134-6 and 134-51.[3]

As we noted at the outset, the dispositive issue in these appeals by Gregg B. Phillips is the legality of the warrantless search of his vehicle and the seizure of the firearm uncovered by the search.

---

[2] The court's oral findings of fact and conclusions of law were stated thus:

Okay. After reviewing the testimony and the memoranda and the arguments of Counsels, I find that it was reasonable for the officers to stop and — stop the defendant to ask him questions based on the car fitting the description that had been provided them being in the area. I feel the officers did have the right to go up and ask questions only of the defendant. But then, when this large knife was found in open view on the seat, I — I think the officers then had probable cause to investigate further, and it was reasonable then for them to ask the defendant to actually step out of the car.

The one officer or two, depending who you believe, observing the bullet-proof vest, I think that is further justification for patting down the defendant, and the one officer testifying that he became apprehensive after seeing the vest that there might be a gun around. I think that justified further search, and Carreiro testified that he patted down the defendant finding nothing, and Medina looked inside the car.

He had to bend over because this is a sports car. It's very low, and bending over he caught sight of something black and bulky sticking out from under the seat with a little bit of chrome or silver showing.

I think, at that point, it was reasonable for him to go further because of the size of the object and also, this chrome or silver showing.

And based on the circumstances, I find that intrusion was necessary and warranted. And so, the motion will be denied.
Transcript at 7-8, June 30, 1983.

[3] The defendant was not charged with a violation of HRS § 134-6. In view of our reversal of the district court's denial of the motion to suppress, we do not dwell further on the error committed in lodging charges against the defendant.

## II.

The settled law "in this jurisdiction [is] that warrantless searches are unreasonable unless they fall within one of the specifically established and well delineated exceptions. *State v. Kender,* 60 Haw. 301, 307, 588 P.2d 447, 451 (1978); *State v. Elderts,* 62 Haw. 495, 617 P.2d 89 (1980)." *State v. Jenkins,* 62 Haw. 660, 662, 619 P.2d 108, 110 (1980); *see also State v. Fields,* 67 Haw. 268, 281, 686 P.2d 1379, 1389 (1984); *State v. Ortiz,* 67 Haw. 181, 184, 683 P.2d 822, 825 (1984). The State would have us approve the search of the defendant's car under the automobile exception established in *Carroll v. United States,* 267 U.S. 132 (1925). Our delineation of this exception is:

[A] warrantless search of an automobile [is] proper where the police [have] probable cause to search at the time of the warrantless search and seizure, and they [have] reason to believe that because of the car's mobility or exposure, there [is] a foreseeable risk that it [may] be moved or that the evidence which it contain[s may] be removed or destroyed before a warrant [can] be obtained.

*State v. Faulkner,* 64 Haw. 101, 106-07, 637 P.2d 770, 775 (1981); *see also State v. Elliott,* 61 Haw. 492, 605 P.2d 930 (1980). Thus, the initial inquiry perforce is whether there was probable cause justifying a search. *State v. Faulkner,* 64 Haw. at 107, 637 P.2d at 775.

"Probable cause . . . exist[s] when the facts and circumstances within one's knowledge and of which one has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a crime [has been or is] being committed." *State v. Haili,* 63 Haw. 553, 555-56, 632 P.2d 1064, 1065 (1981); *see also State v. Agnasan,* 62 Haw. 252, 614 P.2d 393 (1980); *State v. Chong,* 52 Haw. 226, 473 P.2d 567 (1970). But we are far from convinced that the "reasonably trustworthy information" available to the police officers at the time of the search warranted a belief that the defendant had committed or was committing a crime.

The officers hurried to the Lanikai Boat Ramp upon the receipt of information that an unidentified male was threatening people. The wisdom of investigating any reported crime is not open to

doubt. Yet, an anonymous tip "is devoid of any of the underlying circumstances from which [an] officer can conclude that the infor-' mant was credible and his information reliable." *State v. Ward,* 62 Haw. 509, 511, 617 P.2d 568, 570 (1980). Moreover, the anonymous tip here "is devoid of any of the underlying circumstances which explain how the informant knew [the suspect was] committing a crime." *Id.* Without more, a faceless informer's tip does not give cause for the forcible stop of a person, let alone the search of his car. *See State v. Temple,* 65 Haw. 261, 271, 650 P.2d 1358, 1364 (1982); *State v. Joao,* 55 Haw. 601, 603-04, 525 P.2d 580, 582-83 (1974).

The State claims there was more here. True, the defendant was operating an MG with a particular license plate number just as reported. Yet when the two police officers reached the scene nothing there suggested a crime had been committed and the defendant was the perpetrator. The sighting of a knife in his vehicle might have given the officers reason to think they should carry their inquiry further. But the mere possession of a diver's knife is not proscribed by law, *see State v. Giltner,* 56 Haw. 374, 537 P.2d 14 (1975), and we cannot conclude the facts and circumstances within the officers' knowledge at the time of the search were sufficient to justify a belief that a crime was being committed.

The seizure of the knife brought an order for the defendant to alight. This was followed by a further command to "[g]et away from the car" so the officers could "look inside." And when Phillips did, Officer Medina stood at the vehicle's open door, "ben[t] down to get [his] head inside," and "noticed [a bulky black] object underneath the front seat." Obviously, the officers had no knowledge that there was a firearm in the vehicle when the defendant was told to step aside so a search could be made.

The State argues the officers' suspicion that he was wearing a bulletproof vest, which subsequently was confirmed, gave them reason to believe there was a firearm. In Officer Medina's words, "I felt if he was wearing [a bulletproof vest], it was for a reason and possibly there might be another --- might be a gun in the car." But conjecture that "possibly there might be . . . a gun" is not tantamount to probable cause, which in a search situation presupposes a belief resting on reasonably trustworthy information that a crime has been or is being committed and evidence of the crime is con-

cealed in the place to be searched. *State v. Faulkner,* 64 Haw. at 106-07, 637 P.2d at 775; *State v. Elliott,* 61 Haw. at 495, 605 P.2d at 932-33. That there was a gun in the car as the officer speculated did not render the search legal. "[A] search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success." *United States v. Di Re,* 332 U.S. 581, 595 (1948) (footnote omitted).[4]

The district court's denial of the motion to suppress the seized firearm as evidence is reversed, the convictions of Gregg B. Phillips of violations of HRS §§ 134-6 and 134-51 are set aside, and the case is remanded for proceedings not inconsistent with this opinion.

*Ken T. Kuniyuki (Glenn M. Nagata* with him on the brief; *Kuniyuki & Chang,* of counsel) for appellant

*Alexa Fujise (Arthur E. Ross* on the brief), Deputy Prosecuting Attorneys, for appellee

---

[4] The State argued in the alternative that the search was justified as a protective search. But the facts in this case in no way suggest the search could have been a protective search.