(11 P.3d 72)

No. 84,088

STATE OF KANSAS, *Appellee*, v. MICHAEL R. LUDES, *Appellant*.

Opinion filed September 8, 2000.

*Marilyn M. Wilder*, of Adrian & Pankratz, P.A., of Newton, for appellant.

*Michael L. Leyba*, assistant county attorney, *Matt Treaster*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before RULON, P.J., KNUDSON, J., and TIMOTHY E. BRAZIL, District Judge, assigned.

KNUDSON, J.: Michael R. Ludes appeals after being convicted of driving under the influence of alcohol (DUI). On appeal, Ludes contends the trial court erred in denying his pretrial motion to dismiss the criminal complaint, asserting the arresting officer lacked probable cause to make a traffic stop. We note this issue was properly preserved for appeal. See *State v. Cellier*, 263 Kan. 54, Syl. ¶ 2, 948 P.2d 616 (1997).

At the pretrial hearing to dismiss, the arresting officer, Sean Corcoran, testified that shortly before 6 p.m. on October 29, 1998, he was informed by a police dispatcher: "Somebody had called them saying that there was a person on a motorcycle, approximately one-eighth of a mile south of U.S. 50 on Prairie Lake Road and that the person on the motorcycle appeared to be injecting something into his arm with a needle."

Corcoran drove approximately 1 mile to the given location and saw a motorcycle northbound on Prairie Lake Road. Corcoran proceeded south and passed the cyclist, then turned around and followed the motorcycle. When the cyclist turned east on U.S. 50, Corcoran continued to follow and observe. Corcoran testified the cyclist did not commit any traffic infractions or do anything out of the ordinary. Nevertheless, Corcoran made the decision to stop the motorcycle being driven by Ludes. He explained:

"Well, I decided to—to stop the motorcycle. Another reason or another thing that crossed my mind besides, of course, drug use, is I have a wife that's a diabetic, and she has had problems with the past, is insulin dependent. And people can get into a lot of trouble if they don't follow their insulin routine and that's a concern, too, if somebody is having a reaction."

Corcoran told the trial court possible criminal activity was the primary reason for stopping the motorcycle with Ludes' safety a secondary concern.

The subsequent investigation leading to Ludes' arrest for DUI need not be related. Ludes does not challenge Corcoran's probable cause to arrest or the sufficiency of the evidence to support the underlying conviction.

The trial court overruled Ludes' motion to dismiss, stating:

"The defendant's chief complaint with the activities of Officer Corcoran is that there was no corroboration of the anonymous tip. Officer Corcoran clearly did

not observe the presence of a needle in the defendant's arm himself, and observed no erratic driving which would otherwise justify a stop of the motorcycle being operated by Mr. Ludes. As *Tucker* clearly indicates, however, an anonymous tip may justify the stop of a motor vehicle by police where the tip reveals an immediate and clear danger to the public.

. . . .

"This was not a situation where a large amount of time had elapsed between the call and the officer's observation of the motorcycle [ridden] by Mr. Ludes. Under the circumstances, the officer could not know whether the defendant had taken some form of substance, either legal or illegal, which might be affecting his ability to drive the vehicle. However, the officer knew not just that the motorcyclist had been in possession of a syringe, but it had actually been observed protruding from the arm of the motorcyclist. It was reasonable for the officer to assume that something had been used immediately prior to his observation of the driving activity, and I believe this constituted a reasonable and articulable suspicion for a public safety stop."

Apparent from the uncontroverted facts and the trial court's ruling, the issue on appeal is not whether Corcoran had probable cause to stop the motorcycle. The issue is whether Corcoran had reasonable and articulable reasons to support an investigatory stop under K.S.A. 22-2402 or under the so-called public safety exception recognized in *State v. Vistuba*, 251 Kan. 821, 824, 840 P.2d 511 (1992). This issue raises constitutional concerns under the Fourth Amendment to the United States Constitution and §15 of the Kansas Constitution Bill of Rights. Our standard of review is a mixed question of law and fact. *State v. Field*, 252 Kan. 657, 664-65, 847 P.2d 1280 (1993). We will give great deference to the trial court's findings of fact, but the ultimate determination of whether the stop was constitutionally permissible is a legal question requiring independent appellate determination.

Unfortunately, in previous appellate decisions of the Kansas Court of Appeals and the Kansas Supreme Court, there has been a tendency to blend the investigatory stop permitted under K.S.A. 22-2402 with the public safety stop recognized in *Vistuba*. We suspect this has happened because the touchstone under either exception is a finding of "specific and articulable facts" to support the intrusion. This tendency obfuscates the ever present question under the Fourth Amendment as to whether a particular action is reasonable under the totality of circumstances. This question in-

evitably requires that we balance the interest of the government against the interest of the individual. It is a constitutional imperative that we distinguish an investigatory stop from a public safety stop to properly balance these competing interests. As stated in *U.S. v. King*, 990 F.2d 1552, 1560 (10th Circ. 1993):

"[W]hen a police officer initiates an encounter with a person for a purpose other than to investigate criminal activity, the governmental interest in effective crime prevention and detection is irrelevant. *See* [*United States v. Montoya de Hernandez*, 473 U.S. 531, 537, 87 L. Ed. 2d 381, 105 S. Ct. 3304 (1985)] (reasonableness inquiry must consider the nature of the seizure)."

For the above reasons, and notwithstanding the trial court's conclusion of a public safety stop, our analysis will be two-fold: first, under an investigatory stop and then under the public safety stop recognized in *Vistuba.*

### Investigatory Stop

In *State v. Slater*, 267 Kan. 694, 696-97, 986 P.2d 1038 (1999), the court gave this succinct summary:

"The traffic stop of a vehicle by a law enforcement officer is a seizure under the Fourth Amendment to the United States Constitution. *State v. Hopper*, 260 Kan. 66, 69, 917 P.2d 872 (1996). A law enforcement officer may stop any person in a public place based upon specific and articulable facts raising a reasonable suspicion that such person has committed or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). K.S.A. 22-2402(1), the Kansas stop and frisk statute, is a codification of the Fourth Amendment search and seizure principles expressed in *Terry*."

In our analysis, we rely heavily upon the reasoning in *Slater* because the Supreme Court dealt with a very similar question to the one we now consider:

"The question raised by this appeal is whether the anonymous tip of a 'possible drunk driver' at a specific location, together with a specific description of the vehicle, license tag number, and address of the registered owner is alone sufficient to provide an articulable and reasonable suspicion that a crime is being committed." 267 Kan. at 696.

In *Slater*, the Supreme Court utilized three factors synthesized from multiple jurisdictions to determine whether a stop based upon an anonymous tip was lawful. The first factor is the type of

tip involved; the second factor is the detail given about the observed criminal activity; and the third factor is whether the officer's personal observations corroborated the information supplied in the tip. 267 Kan. at 700.

In this case, the dispatcher gave Corcoran the information received from an anonymous caller whose veracity could not be established. However, anonymous tips may support a lawful traffic stop if the information given is detailed and then corroborated by subsequent officer observation. See 267 Kan. at 702-03.

The second factor is the detail given by the caller about the observed activity. According to Corcoran's testimony, the caller stated there was "a person on a motorcycle, approximately one-eighth of a mile south of U.S. 50 on Prairie Lake Road and that the person on the motorcycle appeared to be injecting something into his arm with a needle."

The criteria among jurisdictions on what constitutes sufficient details varies greatly. Some courts allow conclusive statements while others require specific facts which support the caller's criminal allegations. See *Slater*, 267 Kan. at 704-05. In this case, the caller stated a person appeared to be injecting something into his arm with a needle. Possession of drug paraphernalia, such as syringes to be used to inject controlled substances, is prohibited criminal conduct. K.S.A. 1999 Supp. 65-4152. But based upon the caller's scant information, we do not believe it is reasonable to infer the person referred to by the caller was engaged in criminal behavior. Further, the caller did not provide a description of the person, the clothing the person was wearing, the type of motorcycle the person was riding, or how long and under what conditions the caller was able to observe the alleged criminal behavior. As a matter of fact, it is not clear from Corcoran's testimony that the anonymous caller actually made a first-hand observation of the cyclist. We believe such information is necessary to support the caller's veracity.

The third factor is whether the officer's personal observations corroborate the information supplied in the tip. The trial court found Corcoran confirmed a person on a motorcycle was found in the area the caller described, thereby verifying two of the three

statements made by the caller. Corcoran testified he observed Ludes operating the motorcycle and did not observe any erratic or reckless driving. He testified Ludes failed to signal a turn but that was not uncommon in that part of the county. The failure to signal provides authority for an officer to make a lawful traffic stop, but the State did not make this argument, and the court did not use the infraction as a basis for its findings.

We conclude under the factors set forth in *Slater*, Corcoran did not have the requisite reasonable suspicion to stop Ludes.

## Public Safety Stop

A criminal infraction is not always necessary to justify a vehicle stop. "Safety reasons alone may justify the stop, *if the safety reasons are based upon specific and articulable facts*." (Emphasis added.) *Vistuba*, 251 Kan. at 824.

Corcoran testified he had concerns Ludes may have been injecting insulin. Corcoran testified his wife is a diabetic, and he has personal knowledge of the effects of not following an insulin routine. However, he testified his concern regarding possible criminal activity was paramount. Under such circumstances, we seriously question whether the public safety exception should even come into play. See *Cady v. Dombrowski*, 413 U.S. 433, 441, 37 L. Ed. 2d 706, 93 S. Ct. 2523 (1973) (requiring exigent circumstances to support the "community caretaking functions").

"[W]e caution that [an anonymous] tip may not be sufficient where the risk to the public is not urgent and the time exists to verify all aspects of the tip, including the caller's reliability. Reliance on this decision to justify the use of an anonymous tip under other circumstances would be unwise, and we strongly discourage any attempt to expand this decision beyond the perimeters indicated." *State v. Tucker*, 19 Kan. App. 2d 920, 931-32, 878 P.2d 855, *rev. denied* 255 Kan. 1007 (1994).

We do not find any exigent circumstances that would permit the interests of the State to override Ludes' right to be left alone. Also, we believe it somewhat disingenuous for the State to pursue an investigatory function with a fall back position that the stop was in the interest of public safety. If successful, the public safety stop would literally emasculate the constitutional protection afforded a motorist's privacy under *Terry*.

The trial court noted "the officer could not know whether the defendant had taken some form of substance, either legal or illegal, which might be affecting his ability to drive the vehicle." However, this finding was contrary to the testimony and evidence presented. Corcoran followed Ludes for some time and distance without observing Ludes having difficulty operating the motorcycle or in any physical distress. The trial court's finding also miscasts the fundamental issue: Did Corcoran make the stop based upon specific and articulable facts constituting adequate grounds that Ludes was in distress? See *Vistuba*, 251 Kan. at 825.

Our cases, while not always requiring specific direct observation by law enforcement officers of criminal behavior, do require more than mere concern. In *Vistuba*, the deputy sheriff observed the defendant driving below the speed limit and hugging the curb. She then followed the defendant out of the city limits for approximately 3 miles and observed the defendant's pickup weave from the roadway to the dirt shoulder and back more than once. The deputy's observations supported a lawful safety stop. 251 Kan. at 822, 824. In *Tucker*, 19 Kan. App. at 921, a caller stated a driver was running other vehicles off of the roadway and gave a detailed description of the vehicle and driver. The officer who was dispatched to the scene did not observe erratic driving, but the stop was held to be a proper safety stop because the vehicle was in heavy morning traffic and the detailed information that the driver had been running vehicles off the road. 19 Kan. App. 2d at 922. This court stated it believed "where the danger to the public is clear, urgent, and immediate, the equation must be weighted in favor of protecting the public and removing the danger." 19 Kan. App. 2d at 927. In the present case, the danger to the public was neither clear, urgent, nor immediate.

Because the caller's tip was so lacking in details and Corcoran did not observe any behavior which would indicate immediate danger to Ludes or the public, it cannot be held the stop was justified under the guise of a safety stop.

For all of the foregoing reasons, we conclude the trial court's decision should be reversed and Ludes' motion to dismiss granted.

Reversed and remanded with directions.