84 P.3d 524

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Leslie G.O.K. GUERNSEY, Defendant–Appellant.**

**No. 22767.**

Intermediate Court of Appeals of Hawai'i.

Jan. 5, 2001.

Certiorari Granted Feb. 6, 2001.

Taryn R. Tomasa, Deputy Public Defender, for Defendant–Appellant, on the briefs.

Alexa D.M. Fujise, Deputy Prosecuting Attorney, City and County of Honolulu, for Plaintiff–Appellee, on the briefs.

BURNS, C.J., WATANABE and FOLEY, JJ.

Opinion of the Court by BURNS, C.J.

Defendant Leslie G.O.K. Guernsey (Guernsey) appeals the July 23, 1999 judgment convicting him of Driving Under the Influence of Intoxicating Liquor (DUI), Hawai'i Revised Statutes (HRS) § 291–4(a)(1) (Supp.1998).[1] More specifically, Guernsey appeals the April 12, 1999 oral denial of his April 8, 1999 Motion to Suppress Evidence Obtained From an Illegal Stop (April 8, 1999 M/S).

Concluding that Guernsey was illegally stopped by the police officer involved, we reverse the April 12, 1999 oral denial of the April 8, 1999 M/S, vacate the July 23, 1999 judgment, and remand for further proceedings consistent with this opinion.

## BACKGROUND

On January 22, 1999, at approximately 2:45 a.m., Honolulu Police Department (HPD) Officer Anthony Shimizu (Officer Shimizu) received a call from the HPD dispatcher. The dispatcher informed him that an anonymous female caller was reportedly "following a person who was bleeding [i.e., weaving] all over the road and almost cut [her] off." The dispatcher relayed that the caller was following the vehicle into the Koko Marina Shopping Center.

At the time of the dispatcher's call, Officer Shimizu was standing in front of Zippy's restaurant in the Koko Marina Shopping Center parking lot. The dispatcher relayed

to Officer Shimizu the make, model, and license plate number of the vehicle. As Officer Shimizu spoke with the dispatcher, the subject vehicle moved toward and passed Officer Shimizu.

Officer Shimizu got into his vehicle and proceeded to follow the subject vehicle as it turned left out of the Koko Marina Shopping Center parking lot onto Lunalilo Home Road. Before turning left, the vehicle first made a stop at a stoplight. Approximately ten seconds after the vehicle made the left turn onto Lunalilo Home Road, Officer Shimizu activated his blue light and siren. The suspect vehicle pulled over in the area of the 300 block of Lunalilo Home Road. At the time of the stop, Officer Shimizu did not see any other vehicle on the road.

Officer Shimizu testified that when the vehicle passed him, he said, "Okay, that's my hazardous driver. Só I told my dispatcher that, okay, I got the vehicle and I'm going to attempt to pull him· over." Officer Shimizu further testified that he stopped the vehicle because "we got an anonymous complaint of a hazardous vehicle[.]"

Officer Shimizu identified Guernsey as the driver of the vehicle. Officer Shimizu explained to Guernsey that his vehicle matched the description of a vehicle reported to have been driving recklessly. While speaking to Guernsey, Officer Shimizu smelled alcohol on Guernsey's breath. Officer Shimizu administered, and Guernsey failed, the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg stand. Officer Shimizu arrested Guernsey for DUI.

In the Declaration of Counsel supporting the April 8, 1999 M/S, defense counsel stated that "[i]n [Guernsey's] administrative license revocation hearing, it was determined that there was no probable cause to stop [Guernsey] and the license revocation was rescinded[.]"

---

1. Hawai'i Revised Statutes § 291–4(a)(1) (Supp. 1999) provides, in relevant part, as follows:
   A person commits the offense of driving under the influence of alcohol if: ... [t]he person operates or assumes actual physical control of · the operation of any vehicle while under the influence of intoxicating liquor, meaning that the person concerned is under the influence of liquor in an amount sufficient to impair the person's normal mental facilities or ability to care for oneself and guard against casualty[.]

On April 12, 1999, prior to trial, the court heard and denied Guernsey's April 8, 1999 M/S.

On July 23, 1999, after the trial, the court found Guernsey guilty of DUI, suspended his driver's license for 90 days, and fined him one hundred fifty dollars ($150.00).

## POINT ON APPEAL

Guernsey contends that Officer Shimizu lacked the reasonable suspicion necessary for an investigative stop, that the evidence of guilt was obtained during the illegal investigative stop, and that the court reversibly erred when it entered its April 12, 1999 oral denial of the April 8, 1999 M/S and the July 23, 1999 judgment.

## STANDARD OF REVIEW

■ "We review the circuit court's ruling on a motion to suppress de novo to determine whether the ruling was 'right' or 'wrong.'" *State v. Kauhi*, 86 Hawai'i 195, 197, 948 P.2d 1036, 1038 (1997) (citing *State v. Navas*, 81 Hawai'i 113, 123, 913 P.2d 39, 49 (1996)).

## DISCUSSION

### 1.

### Investigative Stop Exceptions to the Warrant Requirement

■ The stopping of an automobile and detention of its occupants constitutes a "seizure" within the meaning of the Fourth and Fourteenth Amendments of the United States Constitution. *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *State v. Wyatt*, 67 Haw. 293, 687 P.2d 544 (1984).

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, section 7, of the Hawai'i State Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

The protections afforded under Article I, section 7, of the Hawai'i State Constitution have been extended beyond those available under the Fourth Amendment "when logic and a sound regard for the purposes of those protections have so warranted." *State v. Kachanian*, 78 Hawai'i 475, 480, 896 P.2d 931, 936 (1995).

■ Any warrantless search or seizure is presumed to be unreasonable, invalid, and unconstitutional. The burden rests on the State to prove that the warrantless search or seizure falls within a specifically established and well-delineated exception to the warrant requirement. *State v. Ortiz*, 67 Haw. 181, 683 P.2d 822 (1984). The result of a failure to meet this burden is that the evidence gathered from the illegal search will be suppressed as "tainted fruits of the poisonous tree." *State v. Moore*, 66 Haw. 202, 659 P.2d 70 (1983).

■ In appropriate circumstances, a police officer may stop a person for investigative purposes even though there is no probable cause to make an arrest. *State v. Silva*, 91 Hawai'i 80, 979 P.2d 1106 (1999). To justify an investigative stop, the police officer must

be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The ultimate test in these situations must be whether from these facts, measured by an objective standard, a [person] of reasonable caution would be warranted in believing that criminal activity was afoot and that the action taken was appropriate.

*State v. Bolosan,* 78 Hawai'i 86, 92, 890 P.2d 673, 679 (1995) (citation omitted).[2]

Officer Shimizu's stop of Guernsey was a stop based on the allegations of an anonymous caller. The general question is whether the facts satisfied the *Bolosan* requirements. The specific question is whether an investigative stop of an automobile premised solely on information supplied by an anonymous informant is sufficient to satisfy the *Bolosan* requirements. The answer is no.

As articulated by Professor LaFave, "Whenever less information is required about either the identity or character of an informant or about what exactly the informer said and how he knew, then the potential for police fabrication inevitably increases." 4 W. LaFave, *Search and Seizure* § 9.3(e) at 483 (2d ed.1987). Of equal concern is the real possibility of drivers harassing each other by falsely reporting wrongdoing to the police by way of anonymous telephone calls.

In *State v. Joao,* 55 Haw. 601, 525 P.2d 580 (1974), the defendant successfully challenged an investigative stop of an automobile premised solely on information supplied by an unidentified informant. The Hawai'i Supreme Court noted that while a police officer is permitted, in limited circumstances, to detain an individual on the basis of reliable information even without probable cause, a police officer is not permitted to go so far as to use unreliable, unsubstantiated, conclusory hearsay to justify an invasion of an individual's liberty. *Id.* at 603, 525 P.2d at 582.

In *State v. Kea,* 61 Haw. 566, 606 P.2d 1329 (1980), the informant's descriptions of both the vehicle and its male occupant were verified by police. More importantly, however, before any stop was made, the police observed that "the vehicle the defendant was driving bore two different license plate numbers, 2N1974 in front and F7424 in the back." *Id.* at 569, 606 P.2d at 1331. The differing license plates alone authorized the investigative stop. *See* HRS § 249–11 (Supp. 1999).

In *State v. Kuahuia,* 62 Haw. 464, 616 P.2d 1374 (1980), an anonymous informant reported that "a local male in a white Datsun or Toyota sedan bearing license plate number FT–4398 had just been seen in the Liliha Square Shopping center with a rifle in the back of the car." *Kuahuia* at 464, 616 P.2d at 1374. The police immediately responded to the call, and an officer saw the rifle as he approached the already stopped vehicle. *Id.*

In *State v. Phillips,* 67 Haw. 535, 696 P.2d 346 (1985), officers responded to an unknown caller's complaint that an unidentified, stick-brandishing male was threatening people at the Lanikai Boat Ramp. The caller further apprised the police of the color, make, and license plate number of the alleged culprit's motor vehicle. Upon arrival at the scene, the police found the suspect as described, operating the described motor vehicle with a license plate matching the informant's description. However, because the suspect was not engaged in any behavior suggesting criminal activity, the court held that "without more, a faceless informer's tip does not give cause for the forcible stop of a person." *Id.* at 540, 696 P.2d at 350.

In *State v. Goudy,* 52 Haw. 497, 479 P.2d 800 (1971), the court noted a "substantial dovetailing of police observations with the information given in the anonymous telephone call[,]" *id.* at 499, 479 P.2d at 802, and concluded that "[t]he anonymous telephone call ... was a factor in the totality of the circumstances which made the decision of ... [the police officers] to stop the ... [automobile] and approach its occupants for questioning reasonable." *Id.* at 501, 479 P.2d at 803.

The facts in Guernsey's case are closer to those in *Phillips* than in *Kea,* *Kuahuia,* or *Goudy.* Guernsey's location, vehicle description, and license number provided Office Shimizu with the time and place anchors necessary to partially verify the anonymous caller's tip. Conspicuously absent, however, is any evidence that Guernsey had been "bleeding all over the road" as reported by

---

2. Assuming Hawai'i recognizes the "public safety" and/or "community caretaking" exceptions to the warrant requirement, we conclude that the essence of the requirement in *State v. Bolosan,* 78 Hawai'i 86, 92, 890 P.2d 673, 679 (1995), applies to these two exceptions as much as it applies to the investigative stop exception.

the anonymous informer. Moreover, by pulling Guernsey over within 10 seconds of observing him, Officer Shimizu did not partake in any further observations that might have verified the anonymous informer's information. Following the precedent established by *Kea, Kuahuia, Goudy,* and *Phillips,* we conclude that, by itself, an anonymous informant's report of unlawful activity is insufficient to generate reasonable suspicion. There must be other evidence that by itself or combined with the anonymous informant's report would lead a police officer to reasonably suspect that criminal activity was afoot. As such evidence is lacking in this case, Officer Shimizu acted without reasonable suspicion and the investigative stop was unlawful.

2.

Public Safety Exception

■ In denying the April 8, 1999 M/S, the district court judge stated, in relevant part, as follows:

I think we give short sh[r]ift to the criminal nature of the officer's duty. But, in fact, public safety is also important. And the choices he has, one, you can ignore it, which I think would be unconscionable, especially a call from the highway, given the advent of cell phones, there's more and more common and I think we can take judicial notice that that's true.

. . . .

The problem [with demanding further investigation by police] is he may allowed [sic] Mr. Guernsey to drive another 100 yards and Mr. Guernsey may have driven erratically into a tree on the side of the road or into someone's house and injure himself or others and I think the cost of that is far too high.

. . . .

[I]t could also be that Mr. Guernsey was sick, that something else was wrong, something was wrong with his car and I think the officer has an obligation to at least intervene to see in fact something isn't wrong and it may not be criminal in nature.

The State of Kansas has developed a body of case law dealing with "public safety stops," where safety reasons alone may justify a stop, if based upon specific and articulable facts. *State v. Vistuba,* 251 Kan. 821, 824, 840 P.2d 511, 514 (1992).

In *State v. Ludes,* 11 P.3d 72 (Kan.App. 2000), the court concluded that an anonymous tip may justify a public safety stop only in the presence of exigent circumstances. Where the danger to the public is clear, urgent, and immediate, "the equation must be weighed in favor of protecting the public and removing the danger." *Id.* at 77. Thus, overriding an individual's right to be left alone.

The case of *State v. Tucker,* 19 Kan.App.2d 920, 878 P.2d 855 (1994), involved an anonymous tipper's report of another vehicle driving erratically. Although the officer dispatched to the scene did not observe any erratic driving, the stop was held valid because of the detailed report that the driver had been running other vehicles off of the road and the fact that the vehicle was in heavy morning traffic. *Id.* at 922, 878 P.2d at 855.

Conversely, where no immediate, urgent, and clear public danger exists, Kansas courts have been hesitant to permit a public safety stop based solely on an anonymous informant's tip of another driver's possible DUI. *Ludes* at 75.

Assuming that some form of the Kansas public safety stop exception applies in Hawai'i, it was not proved in this case. The events in question transpired at 2:45 a.m. By Officer Shimizu's own admission, there were no other automobiles in the immediate vicinity at the time of the stop. These facts reveal no immediate, urgent, or clear public danger. The anonymous caller's report of "bleeding all over the road" fails to approximate the situation found in *Tucker* where the offending driver was reported to be running other drivers off of the road in heavy morning traffic. *Tucker* at 921, 878 P.2d at 856. Further, Officer Shimizu's failure to observe any erratic driving provides further evidence that no immediate public danger existed at the time of the stop.

### 3.

#### Community Caretaking Exception

It is well-settled that the duties of police officers include community caretaking functions "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973).

Some jurisdictions recognize the government's ability to perform traffic stops where a driver is ill or a driver's vehicle is experiencing mechanical problems. Such stops are valid only if a person, given the totality of the circumstances, would reasonably believe the driver was in need of assistance. *Wright* v. *State*, 7 S.W.3d 148 at 155 (Tex.Crim.App. 1999); *Cady*, 413 U.S. at 441, 93 S.Ct. 2523.

Assuming that some form of this community caretaking exception applies in Hawai'i, Officer Shimizu's stop did not come within this exception. Just as an investigative stop requires a personal observation by a police officer or other sufficiently corroborating evidence, so too does a stop based on community caretaking functions. In the absence of other sufficiently corroborating evidence, the fact that the police did not witness any indication that Guernsey was ill or that Guernsey's vehicle was experiencing a mechanical problem precludes a stop based on community caretaking considerations.

#### CONCLUSION

Accordingly, we reverse the April 12, 1999 oral denial of the April 8, 1999 Motion to Suppress Evidence Obtained from an Illegal Stop, vacate the July 23, 1999 judgment convicting Guernsey of Driving Under the Influence of Intoxicating Liquor, HRS § 291–4(a)(1), and remand for further proceedings consistent with this opinion.