COMMONWEALTH of Kentucky, Appellant/Cross–Appellee,

v.

Lamont Houston BROWN, Appellee/Cross–Appellant.

Nos. 2004–SC–000553–DG, 2006–SC–000160–DG.

Supreme Court of Kentucky.

April 24, 2008.

Jack Conway, Attorney General, Todd D. Ferguson, Assistant Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellant/Cross–Appellee.

Donald P. Cetrulo, Lexington, KY, Counsel for Appellee/Cross–Appellant.

Opinion of the Court by Justice CUNNINGHAM.

We granted discretionary review of a decision of the Court of Appeals which held that the stop of Appellee/Cross–Appellant, Lamont Houston Brown, was constitutionally deficient, and that all of the evidence and statements flowing from the stop were therefore tainted and inadmissible. We disagree, and therefore, reverse.

Beginning on March 11, 2002, Detective Keith Ford of the Lexington Police Department began receiving anonymous phone calls from a woman claiming Brown was selling cocaine. The woman gave Brown's address, and said he drove a black car belonging to his wife. Between March 11, 2002 and September 12, 2002, Ford received approximately seven more calls from the anonymous woman, later dubbed "Lady X." Lady X claimed that Brown's drug activities took place during the early evening hours in the Green Acres, Lasalle, and Hollow Creek areas. Ford obtained a picture of Brown and investigated to the extent that he determined Brown lived at the address indicated by the caller, that a black car belonging to Brown's wife parked at the residence, and that Brown had a criminal record. Ford also drove by Brown's residence on four or five occasions. Twice the black car belonging to Brown's wife was there, and the other times it was not. When it was not, Ford attempted to locate the vehicle in the area, but was unsuccessful.

On September 12, 2002, at approximately 5:30 p.m., Ford received a call from Lady X telling him that Brown was "leaving at that moment" in the black car with a quantity of cocaine and was going to make some deliveries of the cocaine in a specified area of town. Ford decided to round up some other officers, including Sergeant Edward Hart, to assist him in locating Brown and investigating the complaint. The officers headed to the area which Lady X had mentioned. While waiting at a stoplight, Sergeant Hart observed a man who looked like Brown driving the black car through the parking lot of a Hollywood Video store. Hart radioed this information to Ford.

Sergeant Hart subsequently located the car in a parking lot behind a Huddle House restaurant near the employee entrance. Hart observed a person wearing a Huddle House apron approach and stand by the car. Based upon the collective information he had received, observations he had made that day, and his own experience, Hart believed that a drug transaction was occurring.[1] Hart again radioed Ford

---

1. Sergeant Hart had previously observed ap-   proximately 100 drug transactions, either on

and informed him about the suspected drug buy going down. Hart waited for Ford to get closer, and then they both pulled into the parking lot. Hart pulled his vehicle in at an angle behind Brown's car, and Ford parked his vehicle beside Brown's car.

Brown was in the driver's seat; a juvenile female later identified as Brown's fifteen-year-old stepdaughter was in the passenger seat; and a man later identified as Brian York, a Huddle House employee, was leaning into the open window on the driver's side of the vehicle. The officers exited their cars and approached Brown's vehicle. As the officers approached, York looked at the police in amazement. He was "very excited" and immediately backed away from the car. Ford approached from the passenger side and Hart approached from the driver's side. One of the officers observed Brown pull something out of his pocket, and both officers saw Brown put something into his mouth. The officers extracted Brown from the vehicle. They ordered him to spit out what he had put into his mouth, but he did not initially comply. A white paste began forming around Brown's mouth, a symptom consistent with cocaine ingestion. While being handcuffed, Brown continued to chew and swallow. He soon began exhibiting other medical symptoms consistent with having swallowed cocaine. Emergency medical personnel were called, and Ford rode in the ambulance with Brown to the hospital. Brown indicated to the paramedics that he had swallowed cocaine. He eventually spit out a piece of paper.

York subsequently told the police officers that he was purchasing $200 worth of cocaine from Brown. No money was discovered on York's person, but two $100 bills were found in Brown's vehicle. Other

video or in person.

than the packet which Brown had put into his mouth, no other drugs were discovered on Brown's person or in the black car. The state police lab confirmed that the paper spit out by Brown tested positive for cocaine.

Brown was charged with first-degree trafficking in a controlled substance, tampering with physical evidence, and being a first-degree persistent felony offender. Brown moved to suppress the evidence seized, as well as his incriminating statements, on grounds that all flowed from an illegal stop. The trial court denied the motion to suppress, finding the anonymous tip, combined with the officers having observed Brown in a vehicle while engaged in a possible drug transaction, was sufficient for reasonable suspicion justifying an investigatory stop.

Brown subsequently entered a conditional guilty plea to trafficking in a controlled substance, tampering with physical evidence, and being a persistent felony offender in the first degree. He reserved the right to appeal the trial court's denial of his suppression motion. In accordance with the plea agreement, Brown was sentenced to ten years imprisonment. The Court of Appeals reversed. Citing *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), the court found the anonymous tip was not sufficiently corroborated to provide the requisite reasonable suspicion for the stop.

At the time the officers approached Brown's vehicle, he was already stopped. The car's gear was in the parked position, and Brown was talking to the Huddle House employee through the open window. Brown may not have been stopped, but it would appear he was "seized" within the meaning of the Fourth Amendment. In

view of all the circumstances surrounding the incident, a reasonable person would most likely not have felt free to leave. *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Thus, the officers were conducting an investigatory stop when they observed Brown swallowing the evidence as they walked up to his vehicle.

An officer may conduct an investigatory stop of a person if he has a reasonable articulable suspicion that criminal activity may be afoot. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A reviewing court must weigh the totality of the circumstances in determining whether there was a reasonable articulable suspicion. *Id.* An anonymous tip, standing alone, will rarely exhibit sufficient indicia of reliability to provide reasonable suspicion, because "[u]nlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." *J.L.,* 529 U.S. at 270, 120 S.Ct. at 1378 (citations and internal quotation marks omitted). "[H]owever, there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" *Id., quoting Alabama v. White,* 496 U.S. 325, 327, 110 S.Ct. 2412, 2414, 110 L.Ed.2d 301 (1990).

In *Alabama v. White,* 496 U.S. at 325, 110 S.Ct. at 2412, the United States Supreme Court discussed the corroboration required for an anonymous tip to attain the indicia of reliability sufficient for reasonable suspicion. In *White,* the police received a telephone call from an anonymous person who stated that White would be leaving a specified apartment at a particular time in a brown Plymouth station wagon with a broken right tail light, that she would be going to a particular motel, and that she would be in possession of cocaine in a brown attache case. Officers proceeded to the apartment and observed White, who was carrying nothing, leave and enter a car matching the description provided by the caller. Officers followed as she drove what was the most direct route to the motel, but stopped her prior to her arriving there. The car was searched, and a brown attache case containing marijuana was found. White was arrested and cocaine was later discovered in her purse at the police station. 496 U.S. at 327, 110 S.Ct. at 2414–15.

The Court held that "the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop[.]" 496 U.S. at 332, 110 S.Ct. at 2417. The Court's decision turned on the fact that "'the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.'" *Id., quoting Illinois v. Gates,* 462 U.S. 213, 245, 103 S.Ct. 2317, 2335–36, 76 L.Ed.2d 527 (1983). The Court recognized that facts such as the description of the car sitting outside a particular building could be "predicted" by anyone. What the Court deemed important was the tipster's ability to predict White's "future behavior," a factor present here. The Court concluded that when the police verified this information by observing White drive towards the motel, "there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop." *Id.* at 332, 110 S.Ct. at 2417. In the instant case, the last call from the anonymous tipster was made on September 12th. In that call, the tipster said that Brown was leaving right then in his wife's car and was

going to a particular part of town to deliver drugs. This predictive behavior, in addition to the apparent drug deal going down, was surely sufficient corroboration of the tip for "articulable suspicion."

It is instructive to compare the facts of the landmark case of *Terry v. Ohio* with this one. 392 U.S. at 1, 88 S.Ct. at 1868. In *Terry,* an officer observed Terry and two other men walking back and forth in front of a store. The officer thought that the men were casing out the store for a possible robbery. When the officer approached the three men and asked for identification, he received only mumbled replies. Terry was then grabbed, turned around, and patted down. These bare facts seem paltry compared to the evolving suspicion of Brown which covered six months of observation and surveillance.

The Court of Appeals states that the officers in this case "knew nothing of their own other than the uncorroborated word of Lady X." This is incorrect. From March. through September of 2002, Detective Ford received a steady stream of information from the same anonymous caller concerning Brown. The information from the woman caller identified Brown as a drug dealer who sold cocaine. She also informed Detective Ford that Brown lived at a certain residence and drove a certain type of car which was owned by Brown's wife. Officers corroborated this information by confirming the identity of Brown, his residence, the description of his wife's black car, and the fact that he had a criminal record.[2] Far from being simply a one-time caller, their source had communicated with them on several occasions over a period of several months.

The accumulated information targeted a particular individual driving a particular type of vehicle in a particular area of town at a particular time of day. Acting reasonably upon this information, Officer Ford solicited the assistance of another officer in an attempt to place Brown under surveillance. On the night in question, Brown was driving the car previously described and operating in the area designated by the anonymous informer at approximately the same time period she had predicted. As predicted by the caller, the suspect appeared in the particular area driving the particular car. Certainly, all of this lent an "indicia of reliability" to the tipster's report.

In order to keep Brown under surveillance, the officers followed him to a location behind a Huddle House restaurant. The suspect had stopped his vehicle and an employee of the Huddle House, who had exited through the restaurant's back door, was observed leaning into Brown's car through an open window. Based upon all of the information they had received about this individual over the past several months—and as recent as that very afternoon—and because of their extensive experience in dealing with drug buys, the officers were of the opinion that a drug transaction was going down.

All of this makes this case distinguishable from *Florida v. J.L.,* 529 U.S. at 266, 120 S.Ct. at 1375. In that case, the United States Supreme Court suppressed evidence that the police received based on an anonymous tip that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. This was the extent of the information that the officers acted upon in that case.

■ The touchstone of all Fourth Amendment questions is "reasonableness."

2. The record reveals that Brown's prior criminal record included at least one drug offense. Yet, to be totally fair, while Detective Ford testified that Brown had a criminal record, he did not specifically say he knew what the criminal record was for.

*Brigham City, Utah v. Stuart*, 547 U.S. 398, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006); *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004); *Terry v. Ohio*, 392 U.S. at 1, 88 S.Ct. at 1868. The question for us in this case is whether the officers were reasonable in drawing the conclusion that a drug buy was taking place. Surely, there was articulable suspicion. At this point the officers' options were limited. The suspect had stopped his vehicle and was engaged in a conversation with a person whom the officers believed was buying illegal drugs. That person was leaning into Brown's open car window, and upon seeing the officers apparently recognized them as police and backed away. This belief was based upon information the officers had previously acquired and observations they had made that very day. This created "articulable suspicion."

In examining this case as to the reasonableness of the officers' actions, we must pause and ask ourselves this question. What should the officers have done differently? After discovering the stop behind the Huddle House and observing what the officers reasonably concluded to be a drug transaction, it would have been totally unreasonable for them to have simply driven away at that point.

We believe the trial court was correct in denying the motion to suppress and finding that the anonymous tip was sufficiently corroborated when considering both the information gathered subsequent to the tips, as well as the observations made on the day in question. The material facts of this case are not in dispute. The trial court's findings of fact are conclusive if they are supported by substantial evidence. Therefore, our review of the trial court's ruling is de novo to determine if the trial court's decision is correct as a matter of law. *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky.1998). RCr 9.78. We hold that it was.

Insomuch that we find that the stop was not constitutionally deficient, Brown's incriminating statement allegedly made to emergency medical personnel and law enforcement during the course of his medical treatment is neither tainted nor inadmissible.

Based upon all of the foregoing reasons, we hereby reverse the opinion of the Court of Appeals and reinstate the order and judgment of the trial court denying Brown's motion to suppress.

All sitting. LAMBERT, C.J.; ABRAMSON, MINTON, NOBLE, and SCOTT, JJ., concur. SCHRODER, J., dissents by separate opinion.

Dissenting Opinion by Justice SCHRODER.

I agree with and would affirm the Court of Appeals which held that the stop of Appellee/Cross–Appellant, Lamont Houston Brown, was constitutionally deficient, and that all of the evidence and statements flowing from the stop were therefore tainted and inadmissible. As to Brown's protective cross-appeal, I agree with and would affirm the Court of Appeals' opinion which requires suppression of the evidence and statements to the medical personnel and law enforcement.

The anonymous tipster's knowledge, which had been corroborated only to the extent of Brown's address, the car he drove, and, on the day of the arrest, that he was out, does not lend "indicia of reliability" to her claim that Brown was selling cocaine. These facts are readily observable, existed at the time of the call(s), and could be "predicted" by anyone with some familiarity with Brown. *Alabama v. White*, 496 U.S. at 332, 110 S.Ct. at 2417,

110 L.Ed.2d at 310. Applying the reasoning of the United States Supreme Court in *Florida v. J.L.,* 529 U.S. at 271, 120 S.Ct. at 1379, 146 L.Ed.2d at 260, to the present case, "[k]nowledge about a person's future movements indicates some familiarity with that person's affairs, but having such knowledge does not necessarily imply that the informant knows, in particular, whether that person is … [selling cocaine]." The conduct observed by the police officers on the day of the arrest, Brown's sitting in the car in the parking lot of a restaurant during normal business hours, with a restaurant employee leaning in the window, cannot, in itself, be deemed suspicious activity. Importantly, the officers admitted they saw nothing change hands between Brown and York before "seizing" Brown by blocking him in with their cars. *United States v. Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877, 64 L.Ed.2d at 509.

Even though the officers' assumptions were correct, the fact that evidence of illegal activity was ultimately discovered does not affect a Fourth Amendment analysis. *J.L,* 529 U.S. at 271, 120 S.Ct. at 1379, 146 L.Ed.2d at 260. Reasonable suspicion must be measured in terms of what was known *before* the person is seized. *J.L.* In light of *White,* this is a close case. In a close case, however, I believe we must err on the side of constitutional rights. Therefore, considering the totality of the circumstances, I believe the anonymous tip was not sufficiently corroborated to exhibit the required "indicia of reliability" for reasonable suspicion that Brown was engaging in criminal activity. Hence, I would hold the seizure of Brown was unlawful, and therefore, all evidence, including statements, obtained as a result thereof should have been suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Accordingly, I would

affirm the Court of Appeals on direct appeal and cross-appeal.