(185 P.3d 309)
No. 96,051

STATE OF KANSAS, *Appellee,* v. ERIC MCCADDON, *Appellant.*

Opinion filed June 13, 2008.

*Carl Folsom, III,* of Kansas Appellate Defender Office, for appellant.

*Jeffery Ebel,* assistant county attorney, *Ellen H. Mitchell,* county attorney, and *Paul J. Morrison,* attorney general, for appellee.

HILL, P.J., ELLIOTT and PIERRON, JJ.

HILL, J.: This appeal raises the question of whether a police officer can justify stopping a car for public safety concerns when the officer was actually investigating a disturbance report from an anonymous telephone call. Kansas courts have held that safety reasons alone may justify the police stopping a car if the safety reasons are based on specific and articulable facts. But, an investigatory stop cannot masquerade as a public safety check. Simply because

the police give a public safety reason as a secondary reason for the stop, that reason alone will not justify an investigatory stop if there is no reasonable suspicion of illegal activity. Here, a caller reported a disturbance between a man and a woman at a certain location and that the caller heard the man say he was going to the hospital. Because the police officer stopped a car of the same color and make as reported by the caller to check on the disturbance and had no specific articulable facts about public safety or the safety of the driver, we hold this is not a valid public safety stop. The court erred when it denied the defendant's motion to suppress evidence. We reverse and remand.

*The case history reveals stipulations to the facts.*

Just before midnight on October 25, 2004, the Salina Police Department received an anonymous call about a possible disturbance in the 400 block of South Twelfth Street, reporting a man and woman arguing. The caller said the man left the scene in a white Dodge Neon, saying he was going to the hospital. Salina Police Officer Chuck Huen drove to the location to investigate. Officer Huen arrived 3 or 4 minutes after the dispatcher received the phone call. He looked around for a few minutes but saw no signs of a disturbance. He saw no one at the location. He did spot a white Dodge Neon about half a block away. Huen returned to his patrol car and stopped the Dodge.

Eric McCaddon was the driver. Huen noticed a strong odor of alcohol on McCaddon. When he asked McCaddon if he had been drinking, McCaddon said he had been drinking all day and admitted he had probably been drinking too much to be driving. McCaddon was asked to perform field sobriety tests and was eventually arrested. The result of McCaddon's breath test was 0.144.

After he was charged with driving under the influence of alcohol (DUI), failure to prove liability insurance, and driving while suspended, McCaddon moved to suppress the evidence in this case, arguing it was inadmissible because the officer had no reasonable and articulable suspicion to stop him. At the hearing on the motion, Officer Huen testified about the events leading up to McCaddon's stop. Huen stated he saw nothing unusual about McCaddon's driv-

ing before the stop. Huen testified that he stopped the car to check on the disturbance and to check on the driver's welfare.

After hearing the evidence, the district court determined Officer Huen did not have a reasonable suspicion to stop McCaddon for any criminal activity. But the court found Huen justified in stopping McCaddon's car to check his welfare. The court denied the motion to suppress. The court stated that Huen had acted in good faith on the information from the tip that a man in a white Dodge Neon was on his way to the hospital. The court held this information alone justified a stop.

Following that ruling, McCaddon waived his right to a jury trial and presented the case to the trial court on stipulated facts. In the stipulation, McCaddon continued his objection to the evidence for the same reasons as argued in his motion to suppress. The court found him guilty of DUI and driving while suspended. McCaddon appeals his convictions.

*We use a combined standard of review in this appeal.*

In reviewing a district court's suppression decision, this court reviews the factual underpinnings of the decision with a substantial competent evidence standard and then, using independent judgment, we look at the ultimate legal conclusion by a de novo standard. This court does not reweigh evidence, does not pass on the credibility of witnesses, and does not resolve conflicts in the evidence. See *State v. Ackward*, 281 Kan. 2, 8, 128 P.3d 382 (2006).

*We must first examine the law that governs police-citizen interaction.*

Kansas courts have recognized four types of encounters between police and citizens: voluntary encounters, investigatory stops, public safety stops, and arrests. *State v. Gonzales*, 36 Kan. App. 2d 446, 451, 141 P.3d 501 (2006). The issue in this case is whether Officer Huen's stop of McCaddon was a valid public safety stop.

A public safety stop can be performed if the stop is based upon specific and articulable facts. Our Supreme Court has stated: "[A] civil or criminal infraction is not always essential to justify a vehicle stop. Safety reasons alone may justify the stop, *if the safety reasons*

*are based upon specific and articulable facts.* [Citation omitted.]" *State v. Vistuba,* 251 Kan. 821, 824, 840 P.2d 511 (1992), *disapproved in part on other grounds State v. Fields,* 252 Kan. 657, 664-65, 847 P.2d 1280 (1993); see *State v. Hamman,* 273 Kan. 89, 96, 41 P.3d 809 (2002).

*The public safety stop is unique.*

Public safety stops fall under the police's community caretaking function, which expands beyond the police's role in investigating crime. *Vistuba,* 251 Kan. at 824. Public safety stops are justified by the mobility of the automobile and the danger to the public. *State v. Tucker,* 19 Kan. App. 2d 920, 925, 878 P.2d 855, *rev. denied* 255 Kan. 1007 (1994). In analyzing the validity of a stop, the risks to the public that would occur if an immediate stop is not conducted must be weighed against the right of an individual to be free from such stops. *Tucker,* 19 Kan. App. 2d at 927. "[W]here the danger to the public is clear, urgent, and immediate, the equation must be weighted in favor of protecting the public and removing the danger." 19 Kan. App. 2d at 927.

Public safety stops are " 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.' " *City of Topeka v. Grabauskas,* 33 Kan. App. 2d 210, 214-15, 99 P.3d 1125 (2004) (quoting *Cady v. Dombrowski,* 413 U.S. 433, 441, 37 L. Ed. 2d 706, 93 S. Ct. 2523 [1973]). Public safety stops are not to be used for investigative purposes. *Gonzales,* 36 Kan. App. 2d at 457. Other courts have held the primary motivation of a valid public safety stop must be for community caretaking purposes. See *Corbin v. State,* 85 S.W. 3d 272, 276-77 (Tex. Crim. App. 2002) ("[A] police officer may not properly invoke his community caretaking function if he is primarily motivated by a non-community caretaking purpose.").

*Information from an anonymous tip must be examined for reliability.*

In *Tucker,* this court determined that an anonymous tip can provide reasonable grounds for a police officer to conduct a safety stop. 19 Kan. App. 2d at 928. But the tip must be considered in

the totality of the circumstances leading to the stop in question. The reliability of the tip and the ability to corroborate the tip must be balanced against the risk of harm to the public if the tip is not investigated. 19 Kan. App. 2d at 929.

In *Tucker*, the police received an anonymous tip that a white male was driving a red 1960's model Ford pickup southbound on K-61 Highway and that the driver appeared to be drunk and was running vehicles off the road. Two officers located a pickup matching the description of the vehicle and the driver from the anonymous tip. The officers did not see any erratic driving, but morning traffic on the highway was heavy. One of the officers testified that he pulled the vehicle over in the interest of public safety because the report indicated a potentially drunk person was running cars off the road. This court concluded under the facts of the case that the danger to the public was clear, urgent, and immediate, and justified the vehicle stop. 19 Kan. App. 2d at 931. In doing so, however, this court issued a strong warning:

> "Our decision should be considered carefully within its context. The risk of danger presented to the public by a drunken driver is so great that we cannot afford to impose strict, verifiable conditions on an anonymous tip before an investigatory stop can be made in response to such a tip. To require time-consuming verification of the tip in all aspects might well result in the death of an innocent user of our highways. We do not believe that the Fourth Amendment requires the public to accept such risk, and we decline to impose that risk upon the public. The limited intrusion on time and freedom of travel occasioned by a 'safety stop' is minimal. The risk to the public if the tip is accurate is extremely high. The balance requires that a safety stop of the nature involved in this action be approved. However, we caution that the same type of tip may not be sufficient where the risk to the public is not urgent and the time exists to verify all aspects of the tip, including the caller's reliability. Reliance on this decision to justify the use of an anonymous tip under other circumstances would be unwise, and we strongly discourage any attempt to expand this decision beyond the perimeters indicated." 19 Kan. App. 2d at 931-32.

Then, in *State v. Ludes*, 27 Kan. App. 2d 1030, 11 P.3d 72, *rev. denied* 270 Kan. 902 (2000), an officer responded to a report of a person on a motorcycle at a specific location who appeared to be injecting something into his arm with a needle. An officer saw a motorcycle at the location and followed it. The motorcycle did not

commit any infractions or do anything out of the ordinary. Without verifying any other information, the officer stopped the motorcycle. The officer stated that possible criminal activity was his primary reason for stopping the motorcycle, with the driver's safety as a secondary concern. 27 Kan. App. 2d at 1031. After first analyzing and determining that the officer did not have the requisite reasonable suspicion to perform an investigatory stop, the court analyzed whether the officer had performed a valid public safety stop. 27 Kan. App. 2d at 1035-36. The court considered the language from *Tucker* that an anonymous tip is not sufficient when the risk to the public is not urgent and the time exists to verify all aspects of the tip. The *Ludes* court determined the stop was not a valid public safety stop, stating:

> "We do not find any exigent circumstances that would permit the interests of the State to override Ludes' right to be left alone. Also, we believe it somewhat disingenuous for the State to pursue an investigatory function with a fall back position that the stop was in the interest of public safety. If successful, the public safety stop would literally emasculate the constitutional protection afforded a motorist's privacy under *Terry* [*v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)]." 27 Kan. App. 2d at 1035.

The *Ludes* court also determined that because the tip was so lacking in detail and because the officer did not observe any behavior that would indicate any immediate danger to the driver or the public, the stop was not justified as a public safety stop. 27 Kan. App. 2d at 1036.

*The risk assessment here is low.*

In contrast to *Tucker*, where there was an immediate danger to the motoring public, the tip here raises no concern for other motorists and little concern for the driver of the Neon. The district court failed to consider the risk of harm involved if Huen had not immediately stopped the vehicle and had instead waited until more information was available. As stated in *Tucker*, the reliability of information provided by the tip must be considered in the totality of the circumstances, along with the risk of harm to the public. 19 Kan. App. 2d at 929. In this case, neither the amount of information provided by the tip nor the risk of harm to the public tips the

scales in favor of a valid public safety stop. The caller did not say that anyone was injured. The officer did not observe any erratic driving that would indicate the driver of the vehicle might be injured. Huen testified he immediately pulled over the vehicle without observing it first to see if it appeared the driver was in distress. There was no testimony that traffic was heavy at the time, which might indicate a risk of danger to the public; also, the time at night would indicate that there probably was not heavy traffic posing a great risk to the public.

Further, Officer Huen did not state that the caller actually saw or heard the argument. On cross-examination Huen stated that the caller "reported hearing a male and a female arguing out in the yard"; the caller never stated there were any injuries or that anyone was harmed in the disturbance. Huen testified that the fact that the caller said someone was going to the hospital was his only indication that someone was injured.

Following up, the information provided by the anonymous caller was only partially verified by Huen before he made the stop. When Huen arrived at the location, he did not see anyone in a yard, and he did not speak to anyone regarding a disturbance. While he was at the location looking for the disturbance, he saw a car matching the description travel through an intersection within half a block of him. However, Huen did not verify that the driver was a male before initiating the stop. McCaddon argues that because Huen did not see the vehicle until approximately 10 minutes had passed since the caller stated the vehicle was leaving for the hospital, Huen should have assumed the vehicle would have been more than half a block away. The hospital was approximately 4 blocks from the location of the alleged disturbance. It was late at night, but Huen did not testify about the amount of traffic in the area at the time.

Finally, it does not appear that Officer Huen stopped McCaddon's vehicle primarily for public safety reasons. Huen's first reason for stopping the vehicle was to investigate the disturbance call. In order to justify an investigatory stop, Huen would have needed reasonable suspicion that a crime had been or was about to be committed. See K.S.A. 22-2402. The district court found that he had no reasonable suspicion, and the State does not argue such

suspicion was present in this case. As this court found in *Ludes*, 27 Kan. App. 2d at 1035, allowing an investigatory stop without reasonable suspicion of criminal activity simply because a public safety reason is given as a secondary reason for the stop would emasculate a motorist's constitutional right to be left alone. This is not a valid safety stop. We do not think limiting a police officer's stops to what the law permits is punishment as the dissent opines.

Since we are reversing, we need not address the remaining issues.

Reversed and remanded with directions to grant the motion to suppress.

PIERRON, J., dissenting: I respectfully dissent.

The touchstone of Fourth Amendment jurisprudence is reasonableness. When judging if an officer's actions violate our constitutional bar against unreasonable searches and seizures, we look to the facts of the case and ask ourselves what a reasonable police officer would and should do under the circumstances.

In this case the officer was told through an anonymous tip that a disturbance had just occurred at a specific location and that a man had left the scene in a white Dodge Neon, saying he was going to the hospital. This occurred close to midnight.

The officer arrived a few minutes later, looked around for a few minutes, and then saw a white Dodge Neon about half a block away. He stopped the Neon, driven by Eric McCaddon, who was driving while intoxicated. McCaddon was also later found to be driving while suspended.

Our question should be, under these circumstances, what should the officer do? There were two reasons to stop the vehicle for a quick check: to see if the person driving the car was involved in the disturbance and to check on his possible need for assistance, since he may have needed hospitalization. Taken together, it would seem they justify a quick investigatory stop.

The officer did not have the advantage of reviewing the facts some years later in a court record. He was required to make a decision right then. The majority indicates the correct response

was probably to do nothing, for the reasons set out in their analysis. The trial court and I believe the officer took the correct action of initiating a stop to help clear up a fuzzy but possibly dangerous situation. Late night disputes can escalate and the possible need for medical care by a driver is something that may well call for assistance.

There is no evidence that the officer was doing anything except what we would want a police officer to do in a murky situation like this. We do not know everything about the factual background of the dispute and the stated need to go to the hospital. At the time, neither did the officer. But the actions he took were reasonable under the facts. These led to the discovery of two crimes being committed at that time.

I would affirm the trial court's ruling as I see nothing in the officer's activities to justify our punishing his actions.