Jorge GARCIA; Jose Hernandez; and Anicasio Ramon Lopez, Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Nos. 2008–CA–001729–MR, 2008–CA–001786–MR, 2009–CA–000306–MR.

Court of Appeals of Kentucky.

June 25, 2010.

Discretionary Review Denied by Supreme Court April 13, 2011.

Josian A. Passalacqua, Frankfort, KY, for appellants.

Jack Conway, Attorney General, Wm. Robert Long, Jr., Assistant Attorney General, Frankfort, KY, for appellee.

Before ACREE, CAPERTON, and KELLER, Judges.

## OPINION

KELLER, Judge:

Jorge Garcia, Jose Hernandez, and Anicasio Ramon Lopez (the Appellants) appeal from the order of the Fayette Circuit Court denying their motion to suppress evidence obtained during a vehicular stop. Having reviewed the parties' arguments, the record, and the applicable law, we agree with the Appellants and accordingly reverse and remand.

### FACTS

The sole witness at the suppression hearing was arresting officer Jeffrey May (Officer May),[1] who testified to the following facts. On December 24, 2007, dispatch received a call from an unidentified man who reported seeing a "car full of Mexicans" swerving on the road and almost hitting another car. The caller gave a description of the vehicle as a green 1999 or 2000 model Ford Explorer. The caller reported that the vehicle had pulled into the Speedway[2] gas station on the corner of Versailles Road and Alexandria Drive, and when the occupants got out of the car,

they were stumbling. At the request of the 911 operator, the caller circled the parking lot of the gas station so that he could obtain the license plate number of the Ford Explorer. The caller expressed his concern for the safety of his children who were present in the car with him and the other drivers on the road. The 911 operator did not ask the caller for his name or phone number.

In response to this call, dispatch alerted Officer May who arrived at the gas station in less than two minutes. Upon arriving at the gas station, Officer May observed a vehicle matching the description of the suspect vehicle circling the gas pumps and heading toward the Versailles Road exit. Officer May verified that the vehicle and the occupants matched the description given. As he attempted to verify the license plate number, Officer May made eye contact with a man in a van who pointed toward the green Explorer. Thereafter, Officer May verified the license plate number and proceeded to stop the vehicle before it could enter Versailles Road. Based on Officer May's observations, the Appellants were arrested and subsequently searched.[3]

After hearing Officer May's testimony and the 911 tape, the trial court entered its written order denying the Appellants' motion to suppress. The court reasoned that

1. Throughout the record and in the parties' briefs, "Officer May" and "Officer Mays" are used interchangeably to refer to the same person. "Officer May" is the correct name of the arresting officer; therefore, we will use that spelling.

2. We note that the trial court's order incorrectly states that the caller reported that the vehicle had pulled into the Super America gas station. However, this error is inconsequential to this appeal.

3. We note that while the suppression hearing dealt exclusively with the legality of the stop, the uniform citation completed by Officer

May for Garcia, the driver, indicates that upon approaching the vehicle, Officer May could see an open bottle of Corona between the driver's legs, that Garcia struggled to put the car in park, and smelled strongly of alcohol. The Appellants exhibited signs of drunkenness, including bloodshot eyes, slurred speech, and unsteadiness on their feet. Garcia failed to complete the field sobriety test and an hour and a half after he was seen driving erratically, his blood alcohol content was .220. In the search incident to arrest, the Appellants were discovered to possess forged/false resident alien cards.

the 911 call that reported ongoing criminal activity and the additional act by the caller of procuring the license plate number were sufficient to establish indicia of reliability. The court noted that those facts, coupled with the fact that the officer arrived on the scene in less than two minutes, immediately located the described occupants and the vehicle, and came into contact with another unknown driver who immediately pointed to the same vehicle, established a sufficient basis for the officer to make the traffic stop. The court further noted that had Officer May failed to stop the vehicle at that point, additional lives would have been at risk.

After the trial court denied the Appellants' motion to suppress, Garcia entered a conditional guilty plea of criminal possession of a forged instrument in the second degree and operating a motor vehicle under the influence (with aggravators). Similarly, Hernandez entered a conditional guilty plea to alcohol intoxication and criminal possession of a forged instrument in the second degree, and Lopez entered a conditional guilty plea to criminal possession of a forged instrument in the second degree. This appeal followed.

## STANDARD OF REVIEW

Review of a trial court's grant or denial of a motion to suppress is bifurcated.

First, factual findings of the court involving historical facts are conclusive if they are not clearly erroneous and are supported by substantial evidence. Second, the ultimate issue of the existence of reasonable suspicion or probable cause is a mixed question of law and fact subject to de novo review. In conduct-

ing this analysis, the reviewing court must give due weight to inferences drawn from the facts by the trial court and law enforcement officers and to the circuit court's findings on the officers' credibility.

*Baltimore v. Commonwealth*, 119 S.W.3d 532, 539 (Ky.App.2003) (citations omitted).

## ANALYSIS

On appeal, the Appellants present one argument:[4] that the circuit court erred by denying their motion to suppress evidence. Specifically, the Appellants contend that the police stop of their vehicle was unconstitutional because it was based upon an anonymous tip without any corroborating evidence of wrongdoing or any indicia of reliability. With this argument in mind, we now turn to our established jurisprudence.

■ The Fourth Amendment of the United States Constitution and Section Ten of the Kentucky Constitution prohibit unreasonable searches and seizures by police officers. *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky.1998). "There are three types of interaction between police and citizens: consensual encounters, temporary detentions generally referred to as *Terry* stops,[5] and arrests. The protection against search and seizure provided by the Fourth Amendment to the United States Constitution applies only to the latter two types." *Baltimore*, 119 S.W.3d at 537 (citation omitted).

■ At issue here is a *Terry* stop. In order to effectuate a *Terry* stop,

---

4. Hernandez and Lopez presented one additional argument to this Court: that as passengers in the vehicle driven by Garcia, they have standing to challenge the legality of the stop under *Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). Because the Commonwealth concedes that Her-

nandez and Lopez have standing to challenge the traffic stop, we will not address this argument.

5. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

[T]he officer must be able to articulate more than a mere "inchoate and unparticularized suspicion or 'hunch'" of criminal activity. Rather, a warrantless stop of a vehicle is permissible if the officer has an "articulable and reasonable suspicion" of criminal activity.

The objective justification for the officer's actions must be measured in light of the totality of the circumstances.

*Greene v. Commonwealth,* 244 S.W.3d 128, 133 (Ky.App.2008) (internal citations omitted).

Herein, the Appellants argue that Officer May conducted a *Terry* stop of the vehicle predicated on an anonymous tip. The Appellants contend that, because the tip was from an anonymous informant, Officer May was required to further corroborate the alleged criminal activity beyond simply locating the vehicle that matched the description in the tip. Absent that corroboration, the Appellants argue that the tip was unreliable and could not serve as the basis of a reasonable and articulable suspicion.

In support of their argument, the Appellants rely on *Collins v. Commonwealth,* 142 S.W.3d 113, 115 (Ky.2004), wherein the Court noted:

Complications arise when, as here, the information serving as the sole basis of the officer's suspicion is provided by an anonymous informant, whose veracity, reputation, and basis of knowledge cannot be readily assessed. In situations such as these, we are required to examine the totality of the circumstances, and to determine whether the tip, once suitably corroborated, provides sufficient indicia of reliability to justify an investigatory stop. *Alabama v. White,* 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301, 310 (1990).

In *Florida v. J.L.,* 529 U.S. 266, 272, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254 (2000), the United States Supreme Court cautioned against finding corroboration simply because the person named or described in the tip is found in the place the tipster specifies. In *J.L.,* the Supreme Court declared unconstitutional an investigatory stop based on an anonymous tip that a young, black male wearing a plaid shirt and standing at a particular bus stop was carrying a gun. *Id.* at 268, 120 S.Ct. at 1377. Minutes after receiving the tip, two officers arrived at the bus stop and found J.L., who was wearing a plaid shirt and standing with two other black males. Other than the information provided by the anonymous tipster, the police had no independent reason to believe that J.L. was engaged in any illegal activity. The officers frisked J.L. and found a gun. The Supreme Court determined that because the anonymous tip lacked sufficient indicia of reliability upon which to base reasonable suspicion, the search was invalid. *Id.* at 274, 120 S.Ct. at 1380.

The Supreme Court distinguished *J.L.* from its earlier decision in *Alabama v. White,* which involved an anonymous tip predicting that a woman carrying cocaine would leave an apartment at a specified time in a certain vehicle, and would drive to a named motel. 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). The Supreme Court in *White* concluded that, standing alone, the tip did not justify a stop. It was only after the police observed that the informant had accurately predicted the woman's movements that it became reasonable to think the tipster had inside knowledge and that the tip had the necessary indicia of reliability. *Id.* at 331–32, 110 S.Ct. at 2417.

In holding that the tip in *J.L.* lacked the moderate indicia of reliability present in *White,* the Supreme Court noted that:

The anonymous call concerning J.L. provided no predictive information and therefore left the police without means

to test the informant's knowledge or credibility. That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J.L. of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search.

*J.L.*, 529 U.S. at 271, 120 S.Ct. at 1379. The Court further explained that:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

*Id.* at 272, 120 S.Ct. at 1379.

Relying on *J.L.* and *White*, the Supreme Court of Kentucky in *Collins* determined that "[a]nonymous descriptions of a person in a certain vehicle or location, though accurate, do not carry sufficient indicia of reliability to justify an investigative stop...." 142 S.W.3d at 116. In *Collins*, an unidentified person called 911 from a gas station stating that someone had thrown a bottle of alcohol at another driver and then pulled out of the station. The caller gave the police the license plate number of the vehicle, the vehicle's make and model, and the direction the vehicle was heading. An officer located the vehicle a few miles from the gas station based on the description provided by the tipster. After following the vehicle for approximately two miles without observing any traffic violations, the officer stopped the vehicle. Upon approaching the vehicle, the officer detected a smell of alcohol on

the driver and, consequently, performed a field sobriety test. Thereafter, the defendant was arrested and a blood alcohol test revealed an alcohol concentration level of .186. *Id.* at 114–15.

The Court concluded that, like *J.L.*, the tip did not provide any predictive information but instead consisted solely of information readily available to a casual bystander, such as the defendant's license plate number, his direction of travel, and the make and model of his vehicle. *Id.* at 116. Thus, the Court determined that the officer did not have any predictive information to corroborate or verify that the anonymous tipster had intimate knowledge of any illegal activity. *Id.* Additionally, the Court held that the reliability of the tip was further diminished because the officer did not independently observe any illegal activity or suspicious conduct. Accordingly, the Court concluded that the stop was improper. *Id.* at 116–17.

The Appellants argue that because the tip in this case was from a truly anonymous informant, *Collins* applies. Thus, the Appellants argue that the tip in this case, like the tip in *Collins*, was not sufficiently reliable because Officer May did not independently observe any illegal activity or suspicious behavior. Further, the Appellants argue that the tip was not sufficiently reliable because it did not provide any predictive information to corroborate that the tipster had intimate knowledge of the illegal activity.

However, the Commonwealth argues that *Collins* does not apply and that this is an "identifiable informant" or a "citizen informant" case controlled by *Commonwealth v. Kelly*, 180 S.W.3d 474 (Ky.2005), rather than an anonymous tipster case. In *Kelly*, two callers who identified themselves as Waffle House employees stated that a recent patron who appeared to be intoxicated was about to drive away. The callers identified the location of the restau-

rant and described the suspect and his vehicle. When the officer arrived at the restaurant, two people whom the officer assumed were the callers were standing outside and pointing across the street to a car that matched the description given on the phone. The officer followed the car to a nearby hotel parking lot and performed a *Terry* stop. *Id.* at 476. The Supreme Court concluded that, because it came from a citizen informant as opposed to an anonymous tipster, the tip carried sufficient indicia of reliability to justify the stop. *Id.* at 477–79.

■ As noted in *Kelly,* citizen informants are tipsters who have face-to-face contact with the police or whose identity may be readily ascertained. *Id.* at 478. Tips from citizen informants "are generally competent to support a finding of reasonable suspicion (and in some cases, probable cause) whereas the same tip from a truly anonymous source would likely not have supported such a finding." *Id.* "What distinguishes a 'citizen informant' tip from other types of tips is the fact that such tipsters are almost always bystanders or eyewitness-victims of alleged criminal activity." *Id.*

In determining that the tip was a citizen informant tip rather than an anonymous tip, the Supreme Court stated that:

We find that the setting and circumstances of this case do not support a conclusion that the tip was truly "anonymous." While the tipsters did not give their names, they (1) identified themselves as employees of the Waffle House restaurant; and (2) provided the location of the particular restaurant where they worked. This information alone raises a strong presumption that these informants could likely be located in the event that their tip was determined to be false or made for the purpose of harassment. However, in addition to the identifying information given over the telephone, Officer Hastings reasonably believed that he had face-to-face contact with the actual tipsters when he pulled into the parking lot of the restaurant and observed two people (1) waiting outside for him; and (2) pointing toward a vehicle that had the same description as the one provided in the dispatch broadcast.... When all these facts are considered in their totality (including and especially the pre-detention investigation which verified most of the information given by the tipsters), it is clear to us that this tip was generated from identifiable informants as opposed to anonymous informants.

*Id.* at 477.

Although the pointing man in this case is similar to the two pointing individuals in the *Kelly* case, there is nothing in the record that reflects that Officer May reasonably believed that he had face-to-face contact with the actual tipster. In fact, the only testimony Officer May gave with respect to this issue was that he saw a man in a van pointing to the Appellants' vehicle and that he did not have a conversation with the pointing man. Additionally, the trial judge made the following finding at the suppression hearing: "We have no way of knowing if the person in the van was the anonymous caller. An argument could be made that maybe they [sic] were. But just as likely, maybe it wasn't." Further, unlike the tipsters in *Kelly* who identified their place of employment, the tipster in this case did not provide any identifying information. Accordingly, the tip at issue in this appeal was not from an identifiable citizen informant.

■ Because the tip in this case is from a truly anonymous informant, we agree with the Appellants that this case fits more into the category of *J.L.* and *Collins.* As in *J.L.* and *Collins,* the tip in this case, standing alone, did not carry sufficient indicia of reliability because it consisted of

information readily available to a casual bystander and failed to provide any predictive information. Moreover, Officer May did not independently observe any illegal activity or suspicious behavior by the Appellants to corroborate the tip. It appears from the record that Officer May was acting in good faith and with the protection of the public in mind. However, given the totality of the circumstances, there was not sufficient indicia of reliability to justify the stop of the Appellants.

For the foregoing reasons, we reverse the order of the Fayette Circuit Court and remand this matter for further proceedings consistent with this opinion.

ACREE, Judge, concurs and files separate opinion.

CAPERTON, Judge, dissents and files separate opinion.

ACREE, Judge, concurring:

This case demonstrates rather precisely the challenge all judges face when applying search and seizure law to persons whom the record ultimately paints as less than virtuous. As footnote 3 of the majority opinion reveals, Appellants fall in that category.

However, the Constitution protects unsavory persons as surely and thoroughly as it protects the most virtuous among us. And since unconstitutional contact between the police and the innocent citizen would typically end with an apology and pleasant parting, the rights of all of us will rarely be protected otherwise than by disciplined application of constitutional protections to the least among us, even the least virtuous.

All judges in this case agree that Officer May conducted himself in a professional manner and carried out his duties in good faith. His actions removed a danger from Kentucky's roadways.

But while both my colleagues assiduously worked to express learned views of federal constitutional law in the context of Kentucky jurisprudence, I cannot agree with both of them. In the end, and recognizing the merits of the dissent, I concur with the majority because that opinion need not be limited to the facts of this case. As always, it is our highest court that may have the final word.

CAPERTON, Judge, dissenting:

I dissent. In reviewing the facts *sub judice,* it is apparent that the "tip" lacked the requisite predictive components to be controlled by *Collins.* However, at the suppression hearing, the Commonwealth argued that this tip was instead from an "identifiable informant," or a "citizen informant," and as such is controlled by *Commonwealth v. Kelly,* 180 S.W.3d 474 (Ky. 2005), rather than an anonymous tipster case.[6] Whether controlled by *Kelly* or

---

6. In the Commonwealth of Kentucky there are three types of interaction between police officers and citizens: consensual encounters, temporary detentions typically referred to as *"Terry* stops," and arrests. *Baltimore v. Commonwealth,* 119 S.W.3d 532, 537 (Ky.App. 2003). However, I note that at least one of our sister states has found four types of encounters between its citizens and the police: the voluntary encounters, investigatory stops, public safety stops, and arrests. The safety stop

[C]an be performed if the stop is based upon specific and articulable facts. Our

Supreme Court has stated: "[A] civil or criminal infraction is not always essential to justify a vehicle stop. Safety reasons alone may justify the stop, if the safety reasons are based upon specific and articulable facts...."

Public safety stops fall under the police's community caretaking function, which expands beyond the police's role in investigating crime. Public safety stops are justified by the mobility of the automobile and the danger to the public. In analyzing the validity of a stop, the risks to the public that would occur if an immediate stop is not conducted must be weighed against the

based on the reasoning set forth in *J.L.,* *Sierra–Hernandez,*[7] *Brown,*[8] and *Brigno-ni–Ponce,*[9] *infra,* I would affirm the decision of the trial court.

In *Kelly,* two callers who identified themselves as Waffle House employees, stated that a recent patron who appeared to be intoxicated was about to drive away. The individuals identified the location of the restaurant and described the suspect and his vehicle. When the officer arrived at the restaurant, two people whom the officer assumed were the employees who telephoned in the tip, were standing outside and pointing across the street to a car that matched the description given on the phone. The officer followed the car to a nearby hotel parking lot and performed a *Terry* stop. *Kelly,* 180 S.W.3d at 476. The Supreme Court concluded that because the tip came from a citizen informant as opposed to an anonymous tipster, the tip carried sufficient indicia of reliability to justify the stop. *Id.* at 477–79.

As noted in *Kelly,* citizen informants are tipsters who have face-to-face contact with the police or whose identity may be readily ascertained. *Id.* at 478. Tips from citizen informants "are generally competent to support a finding of reasonable suspicion (and in some cases, probable cause) whereas the same tip from a truly anonymous source would likely not have supported such a finding." *Id.* "What distinguishes a 'citizen informant' tip from other types of tips is the fact that such tipsters are almost always bystanders or eyewitness-victims of alleged criminal activity." *Id.*

In determining that the tip was a citizen informant tip rather than an anonymous tip, in *Kelly* our Supreme Court stated that:

We find that the setting and circumstances of this case do not support a conclusion that the tip was truly "anonymous." While the tipsters did not give their names, they (1) identified themselves as employees of the Waffle House restaurant; and (2) provided the location of the particular restaurant where they worked. This information alone raises a strong presumption that these informants could likely be located in the event that their tip was determined to be false or made for the purpose of harassment. However, in addition to the identifying information given over the telephone, Officer Hastings *reasonably believed that he had face-to-face contact with the actual tipsters when he pulled into the parking lot of the restaurant and observed two people (1) waiting outside for him; and (2) pointing toward a vehicle that had the same description as the one provided in the dispatch broadcast. . . .* When all these facts are considered in their totality (including and especially the pre-detention investigation which verified most of the information given by the tipsters), it is clear to us that this tip was generated from identifiable informants as opposed to anonymous informants.

*Id.* at 477 (emphasis supplied).

Further, in *Florida v. J.L.,* 529 U.S. 266, 272, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254 (2000), the United States Supreme Court considered the question of whether an

right of an individual to be free from such stops. "[W]here the danger to the public is clear, urgent, and immediate, the equation must be weighted in favor of protecting the public and removing the danger."
*State v. McCaddon,* 39 Kan.App.2d 839, 185 P.3d 309, (2008) (internal citations and emphasis omitted).

**7.** *U.S. v. Sierra–Hernandez,* 581 F.2d 760 (9th Cir.1978).

**8.** *Commonwealth v. Brown,* 250 S.W.3d 631 (Ky.2008).

**9.** *U.S. v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

anonymous tip could, in and of itself, justify an investigatory stop. The Court decided it could not and stated:

> If police officers may properly conduct *Terry* frisks on the basis of bare-boned tips about guns, it would be reasonable to maintain under the above-cited decisions that the police should similarly have discretion to frisk based on bare-boned tips about narcotics. As we clarified when we made indicia of reliability critical in *Adams* [*Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)] and *White* [*Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)], the Fourth Amendment is not so easily satisfied.

*J.L.,* 529 U.S. at 273, 120 S.Ct. at 1380.

Nevertheless, the United States Supreme Court in *J.L.* gave guidance as to the strictures imposed by the Fourth Amendment in other situations by stating that:

> The facts of this case do not require us to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability. We do not say, for example, that a report of a person carrying a bomb need bear the indicia of reliability we demand for a report of a person carrying a firearm before the police can constitutionally conduct a frisk.

*Id.* at 273, 274, 120 S.Ct. at 1380. The obvious import of *J.L.* is to say that a truly anonymous tip is insufficient for guns and narcotics but, to the contrary, may justify an investigatory stop and frisk where general safety of the public is concerned.

The requirements for verification of an anonymous tip as grounds for an investigatory stop appear less strict under the Fourth Amendment than those grounds necessary for a search. As stated in *United States v. Sierra–Hernandez,* 581 F.2d 760, 762 (9th Cir.1978):

> A greater showing of the reliability of an informant's statement is necessary to support probable cause for a search than is needed to support the reasonable, or founded, suspicion which is a prerequisite for a valid stop. *Compare Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), And *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) (probable cause for search), With *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), and *United States v. Avalos–Ochoa,* 557 F.2d 1299 (9th Cir.), Cert. denied, 434 U.S. 974, 98 S.Ct. 532, 54 L.Ed.2d 466 (1977) (founded suspicion for stop). Although it is not certain how much less demanding the test of reliability is where only reasonable suspicion is required, the Supreme Court has said that "(s)ome tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized." *Adams v. Williams,* 407 U.S. at 147, 92 S.Ct. at 1924.

In the case *sub judice,* the officer verified the information given including location, description of the vehicle and occupants, and the license plate number. The officer arrived on scene and discovered exactly what the tipster said would be found. Moreover, the tipster further exhibited a basis of current knowledge when he reported that the Appellants' car had almost hit another vehicle and that the tipster circled the gas pumps at the request of the 911 dispatcher to procure the license plate number of Appellants' vehicle.[10] Of pivotal importance were the ac-

---

**10.** I believe that for a tipster to act at the request of a dispatcher to procure additional information supports the inference that the

tions of a man at the scene upon the officer's arrival. Upon the officer's arrival, a man standing at the gas station pointed to a vehicle which the officer then verified was the same vehicle identified by the anonymous tip.

As in *Kelly*, the man's presence at the scene created a strong presumption that he could likely be located in the event that his identification of the vehicle was determined to be false or made for the purpose of harassment. Further, as in *Kelly*, the officer was face-to-face with a man that identified not just a vehicle, but a vehicle that matched the description of the suspicious vehicle sought by the officer. I believe that whether the man at the scene was either (1) the initial anonymous tipster or (2) an additional tipster, there was sufficient verification to support a finding of "reasonable suspicion" for the stop. If the initial anonymous tipster, then by presenting himself at the scene upon the officer's arrival and directing the officer's attention to the suspicious vehicle, he thereby identified himself as the tipster and attained the status of a citizen informant as in *Kelly*. If an additional tipster, then his actions at the scene of the alleged DUI corroborated the "tip" from the initial anonymous tipster and, by his presence both at the scene and face-to-face with the officer, gave the necessary indicia of reliability to the "tip" for the requisite probable cause to stop a suspected DUI driver.

Given the totality of the circumstances, I believe that this case presents either a "tip" by a citizen informant as in *Kelly*, or was suitably corroborated based on the facts *sub judice*, thereby lending sufficient indicia of reliability and giving Officer May reasonable suspicion for a brief investigatory stop of Appellants' vehicle, pursuant to a report of a DUI driver, under the reasoning set forth in *J.L.* (lessened Fourth Amendment protection where general safety of the public is concerned), and *Sierra–Hernandez* (lessened showing of reliability of an informant's statement is necessary to support a valid stop than probable cause for a search).

In reaching my decision, I take guidance from our Supreme Court in *Commonwealth v. Brown*, 250 S.W.3d 631, 636 (Ky. 2008), wherein the Court asked: "[i]n examining this case as to the reasonableness of the officers' actions, we must pause and ask ourselves this question. What should the officers have done differently?" [11] When faced with the aforementioned information, Officer May had two options: one, to follow the vehicle, allowing a possible drunk driver back onto the roadway or, two, stop the vehicle. I agree with the trial court that Officer May's decision to stop the Appellants' vehicle was the only option that would thwart the potential danger of injury or death to innocent lives. The dangerous situation posed by Appellants' proceeding back onto the roadway bears consideration.[12]

---

tipster is at the same location at the same time as the alleged offender. Such action itself carries indicia of reliability beyond that of a mere anonymous tipster, though likely not rising to the level of a citizen informant.

**11.** I note that the offense of DUI as set forth in Kentucky Revised Statutes (KRS) 189A.010 is essentially comprised of two elements: (1) operating a motor vehicle (2) at or above the legislatively determined intoxication limit (.08). In the case *sub judice*, the officer arriving at the scene clearly observed one element of the crime of DUI, *i.e.*, operation of a motor

vehicle. However, it is often impossible for an officer to determine whether the operator of a vehicle is at or above the legislatively determined limit of intoxication by merely observing the operator in a vehicle. Such a determination can only be made by the officer having direct contact with the suspect.

**12.** Our sister states have responded to the danger of a possible drunk driver in varying ways. *See State v. McCaddon*, 39 Kan.App.2d 839, 185 P.3d 309, 313 (2008) ("The reliability of the tip and the ability to corroborate the tip must be balanced against the risk of harm

Given the situation presented in the case *sub judice*, Officer May pursued a logical course of action, *i.e.*, immediately stopping a reported drunk driver. I would adopt the reasoning of the United States Supreme Court in *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975),[13] but limit our holding today to the facts *sub judice* based on the interest of the public in alleviating DUI drivers from our highways. This is certainly viewable as a governmental interest, and the minimal intrusion of a brief investigatory stop of a suspected DUI driver and the absence of a practical alternative to preventing a suspected DUI driver from returning to the highway and endangering innocent lives, are sufficient to sustain a brief investigatory stop limited in scope to the facts.[14]

to the public if the tip is not investigated."). *See also People v. Wells*, 38 Cal.4th 1078, 45 Cal.Rptr.3d 8, 136 P.3d 810 (2006) ("a citizen's tip may itself create a reasonable suspicion sufficient to justify a temporary vehicle stop or detention, especially if the circumstances are deemed exigent by reason of possible reckless driving or similar threats to public safety. . . .") *Id.* at 813; and "an anonymous and uncorroborated tip regarding a possibly intoxicated highway driver afforded a police officer reasonable suspicion sufficient to justify a temporary detention to investigate further. . . ." *Id.* at 812. And

> the tipster's information regarding the van and its location was sufficiently precise, and its report of a motorist "weaving all over the roadway" demanded an immediate stop to protect both the driver and other motorists. The tip reported contemporaneous activity and its "innocent" details were fully corroborated within minutes of the report.

*Id.* at 816.

Similarly, the Commonwealth of Massachusetts permits an investigatory stop under the emergency exception to the warrant requirement for possible drunk drivers, given that the situation requires "immediate action for the protection of life and property of both the operator and the general public. Simply put, what else was the officer to do?" *Commonwealth v. Davis*, 63 Mass.App.Ct. 88, 823 N.E.2d 411, 413 (2005) (internal citations omitted). Massachusetts in so holding noted:

> that driving under the influence of alcohol presents a grave danger to the public cannot be gainsaid . . . . the threat here [intoxicated driving] is immediate; it threatens serious physical injury; the threat is short-lived. . . .; and the plaintiffs [the motoring public] have no chance to protect themselves . . . [a] drunk driver let loose on the

highways is a deadly menace, not only to the officer, but also to anyone sharing the highways with him.

*Davis* at 413–14 (internal citations omitted).

13. While the corroboration *sub judice* may not rise to the level of that corroboration necessary in cases other than a suspected DUI driver, I would adopt the reasoning found in *United States v. Brignoni–Ponce*, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975), wherein the Court considered stop near the U.S. border and reasoned,

> In this case as well, because of the importance of the governmental interest at stake, the minimal intrusion of a brief stop, and the absence of practical alternatives for policing the border, we hold that when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion. As in *Terry*, the stop and inquiry must be 'reasonably related in scope to the justification for their initiation.' 392 U.S. at 29, 88 S.Ct. at 1884.

14. The suppression hearing dealt exclusively with the legality of the stop, the uniform citation completed by Officer May for Garcia, the driver, and states that upon approaching the vehicle Officer May could see an open bottle of Corona between the driver's legs, that Garcia struggled to put the car in park, and smelled strongly of alcohol. The Appellants exhibited signs of drunkenness including bloodshot eyes, slurred speech, and unsteadiness on their feet. Garcia failed to complete the field sobriety test and an hour and a half after he was seen driving erratically, his blood alcohol content was .220. In the search inci-

dent to arrest the Appellants were discovered to possess a forged/false resident alien card.