NOT DESIGNATED FOR PUBLICATION

No. 128,943

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARCUS WAYNE WOOD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TYLER ROUSH and DAVID DAHL, judges. Submitted without oral argument. Opinion filed June 26, 2026. Affirmed in part, vacated in part, and remanded with directions.

*Merideth J. Hogan*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., COBLE and PICKERING, JJ.

PER CURIAM:  Marcus Wayne Wood appeals his conviction for possession of methamphetamine following a traffic stop and the imposition of fees as part of his sentence. Before his trial, Wood filed a motion to suppress all evidence resulting from the traffic stop, claiming it was obtained through an illegal stop. The district court denied the motion, and the case proceeded to a bench trial on stipulated facts, after which the court found him guilty. On review of the record, we find no error in the district court's

1

suppression decision and thus affirm Wood's conviction, but we remand the case to the district court for a corrected assessment of fees.

FACTUAL AND PROCEDURAL BACKGROUND

On July 8, 2021, Wichita Police Officers Nick Jones and Cory Denton were observing activity in the parking lot of an apartment building when they saw an individual whom they recognized get into the front passenger seat of a silver Honda. Recognizing this individual from his gang affiliation and prior convictions for gun possession and aggravated battery, the officers followed the Honda after leaving the parking lot. The officers' body cameras started recording at about this time. There was a white SUV directly in front of the officers as they followed the Honda, which was directly in front of the SUV. The drivers of the Honda and SUV turned right after the stop sign, onto Hydraulic Avenue. Jones rolled through the stop sign and continued to follow. While in pursuit on Hydraulic Avenue, Jones drove the patrol car somewhat on the left side of the road to see past the SUV. A short distance down this road, the Honda turned left into a private driveway. Jones observed that the driver failed to use the turn signal within 100 feet of the turn. So, Jones initiated a traffic stop.

As Jones pulled up to the Honda, he noticed that the turn signal was on and still active. The driver, later identified as Wood, was already out of the car. Jones approached him and asked for identification. While standing next to Wood's car, Jones flashed his light in the window and observed a gun on the driver's side floorboard. The officers then detained Wood and the individual that they saw getting into the car earlier. There were other passengers in the car, too, and the officers asked them to keep their hands up, knowing there was at least one gun inside the vehicle.

The officers ran Wood's information and learned that he had three outstanding warrants for his arrest. During a subsequent search of Wood's person incident to his

arrest, the officers found pills in Wood's left pants pocket. The State ultimately charged Woods with one count of possession of methamphetamine in violation of K.S.A. 21-5706(a)(c)(1), and one count of failure to signal within 100 feet under K.S.A. 8-1548(b).

Wood moved to suppress all evidence obtained against him, arguing the stop was illegal. The district court held an evidentiary hearing on Wood's motion.

Jones testified at the hearing, and the State played a video of the stop from Jones' body camera. Although Denton was no longer a police officer at the time of the hearing, the video of Denton's body camera was also played while Jones testified. Special Investigator, Eric Gares, testified in Wood's defense. Gares testified about his observations and pictures he took of the area where the stop occurred. His testimony focused on the 100-foot distance that Jones reportedly observed and indicated a possibility that Wood could have used his signal within the required distance. Relatedly, defense counsel noted that per Jones' testimony and the videos, Wood had his turn signal on when the officers pulled him over. In responding to this, Jones testified that Wood activated the signal as he was turning.

Ultimately, the district court denied Wood's motion, finding the officers had reasonable suspicion for the stop. The district court found the video "inconclusive" as to the precise moment Wood activated his turn signal, given the vantage point of the officer's head-mounted body cameras. Still, the district court concluded from the video, which showed the taillights of the Honda, that the officers were capable of seeing the Honda's rear lights. The district court also found Jones' testimony and description of the events consistent with the officers' videos. Given Jones' testimony that the turn signal came on contemporaneously with when the car was turning, the district court found that testimony sufficient evidence to survive the suppression motion. And the district court found Wood's testimony that "[y]ou don't have to signal when you turn into a driveway right off the bat corroborates the officer's observation that the signal was short."

3

After denying the suppression motion, the district court proceeded to the guilt phase of Wood's bench trial. The parties submitted a stipulation of facts regarding Wood's possession of a baggie with methamphetamine pills in his left pants pocket, within his control. After reviewing the stipulation, the district court found Wood guilty of possessing methamphetamine and "not guilty of failing to signal a turn because that was not included in the stipulation." The district court later sentenced Wood to a 12-month prison term but suspended the prison sentence and granted Wood probation as authorized by "Senate Bill 123." During the sentencing hearing, the district court ordered Wood to pay court costs and fees but waived both the initial appointment fee and the appointed attorney fees.

Wood timely appeals.

ANALYSIS

Wood appeals both his convictions, because of the suppression issue, and the imposition of two different fees at sentencing. We address each claim in turn.

I.      *The District Court Did Not Err in Denying Wood's Motion to Suppress.*

Wood first argues that the district court's suppression ruling was not supported by substantial competent evidence.

*Standard of Review*

We review the district court's factual findings on a motion to suppress to determine whether they are supported by substantial competent evidence. When considering the factual findings made by the district court, we do not reweigh evidence or determine credibility. *State v. Garrett*, 319 Kan. 465, 469, 555 P.3d 1116 (2024). When

4

the material facts underlying the district court's decision are not in dispute, the district court's ultimate decision on whether to suppress the evidence is a question of law subject to unlimited review. *State v. Mendez*, 319 Kan. 718, 735-36, 559 P.3d 792 (2024).

We do not reweigh the evidence generally or make independent credibility findings. *State v. Bates*, 316 Kan. 174, 183-84, 513 P.3d 483 (2022); *State v. Galloway*, 311 Kan. 238, 245, 459 P.3d 195 (2020).

*Basic Fourth Amendment Principles*

The Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures. Generally, a warrantless search and seizure of evidence is unreasonable unless an exception to the warrant requirement applies. *State v. Doelz*, 309 Kan. 133, 140, 432 P.3d 669 (2019); *State v. Teeter*, 249 Kan. 548, 550, 819 P.2d 651 (1991).

A traffic stop is a seizure triggering Fourth Amendment protections. *State v. Thompson*, 284 Kan. 763, Syl. ¶ 6, 772, 166 P.3d 1015 (2007). Traffic stops typically require, at a minimum, reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30-31, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); K.S.A. 22-2402(1). But when there is no reasonable suspicion of criminal activity and no warrant to search the vehicle, the legality of the stop and subsequent search hinges on whether an exception exists to the general rule that warrantless searches are per se unreasonable. *State v. Heim*, 312 Kan. 420, 422-23, 475 P.3d 1248 (2020).

Reasonable suspicion demands that law enforcement possess minimal justification for initiating a traffic stop. Deference must be given "to a trained officer's 'ability to distinguish between innocent and suspicious circumstances,'" not evaluating "'whether particular conduct is "innocent" or "guilty," but whether a sufficient degree of suspicion

5

attaches to particular types of noncriminal acts. *United States v. Sokolow*, 490 U.S. 1, 10, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989).'" *State v. Sharp*, 305 Kan. 1076, 1081, 390 P.3d 542 (2017). Whether the officer's conduct was reasonable is evaluated using "common sense and ordinary human experience under the totality of the circumstances." 305 Kan. at 1081.

"'The totality of the circumstances standard precludes a "divide-and-conquer analysis" under which factors that are "readily susceptible to an innocent explanation [are] entitled to 'no weight.'" *United States v. Arvizu*, 534 U.S. 266, 274, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002).'" *Sharp*, 305 Kan. at 1081-82. This also deters the ability of "law enforcement officers or the courts to selectively choose the facts that would establish reasonable suspicion to justify police action." 305 Kan. at 1084.

Reasonable suspicion exists if, at the time of the stop, an officer has specific, articulable facts that criminal activity has occurred, is occurring, or is about to occur. *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014). Appellate courts evaluate questions of reasonable suspicion from the viewpoint of a trained law enforcement officer. *State v. Pollman*, 286 Kan. 881, 890, 190 P.3d 234 (2008); *State v. Johnson*, 293 Kan. 1, 6, 259 P.3d 719 (2011) ("'What is reasonable is . . . viewed in terms as understood by those versed in the field of law enforcement.'").

> "'While "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification . . . . [Citation omitted.] The officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch'" of criminal activity. [Citation omitted.]' *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000). [Citation omitted.]" *Johnson*, 293 Kan. at 6.

Law enforcement officers may only begin a traffic stop based upon "specific and articulable facts raising a reasonable suspicion that such person has committed or is about to commit a crime," or a traffic infraction, as here. *State v. Ludes*, 27 Kan. App. 2d 1030, 1033, 11 P.3d 72 (2000) (citing *Terry*, 392 U.S. at 21).

*Discussion*

Here, the district court's assessment required consideration of whether Jones possessed the reasonable suspicion that Wood failed to use his turn signal 100 feet before making the left-hand turn into a driveway. This would be a violation of K.S.A. 8-1548(a), which provides:  "No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety, nor without giving an appropriate signal . . . ." To appropriately signal the "intention to turn or move right or left when required [this signal] shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning." K.S.A. 8-1548(b).

Wood challenges the district court's findings supporting its decision by pointing out the conflicting evidence on record. He argues the district court's findings were contradictory—that despite the officers' videos being "inconclusive," it accepted the officer's testimony that he was able to see Wood's turn signal. Wood argues that although Jones' body camera was positioned by his right temple, the video still does not show Wood failing to signal. Jones also testified that he was not able to measure 100 feet by simply looking at it. He downplayed this by stating that he gives drivers significant leeway, so he would not underestimate a 100-foot distance when assessing turn signal violations. Also, Gares' testimony indicated that Wood activated his brake lights around 100 feet from his turn and it was unlikely Jones could make a proper observation.

In sum, Wood asks for reversal because the officers' videos do not definitively show that he failed to signal within 100 feet of his turn, and circumstantial evidence

7

shows that he may have signaled appropriately. Such circumstantial evidence included Gares' testimony about when Wood's break lights activated and Jones' testimony that Wood's turn signal was still on when he pulled up to Woods' vehicle.

The State challenges Wood's argument as requesting a reweighing of the evidence. The State also argues that the district court conducted a proper analysis, and a review of the totality of the circumstances supports the district court's ruling.

Neither party provides citations for factually similar cases, which is not necessarily required because these matters are decided according to the facts presented in each case. Still, this is certainly not the first case that our appellate courts have reviewed for reasonable suspicion of turn signal violations. See, e.g., *State v. Greever*, 286 Kan. 124, 141, 183 P.3d 788 (2008) (overruling court of appeals decision and finding officer had probable cause and reasonable suspicion to stop defendant for a turn signal violation, K.S.A. 8-1548, to justify defendant's initial seizure). The standards applied in *Greever* support our analysis that Jones had reasonable suspicion to stop Wood for failing to use his turn signal within 100 feet of his turn. 286 Kan. at 140-41 (where the deputy testified he believed the defendant was committing a traffic offense, the deputy was lawfully authorized to stop the defendant for the offense even if the stop were pretextual).

"A traffic stop is reasonable at its inception if the detaining officer, at the very least, reasonably suspects the driver has violated the law." *United States v. Edgerton*, 438 F.3d 1043, 1047 (10th Cir. 2006). Here, Jones testified that he observed Wood commit the turn signal violation. The remaining evidence does not entirely refute this testimony or otherwise show a lack of reasonable suspicion. And, reasonable suspicion does not require that facts be sufficient to sustain a conviction. Instead, if an "officer reasonably believed in good faith that a traffic violation had occurred, the stop would remain valid even if the driver were to be subsequently found not guilty of the traffic violation." *State v. Marx*, 289 Kan. 657, 666-67, 215 P.3d 601 (2009). Suspicion can also rest on a

8

reasonable mistake of fact or law. *Heien v. North Carolina*, 574 U.S. 54, 61, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014); see also *State v. Krantz*, No. 127,610, 2025 WL 2682209, at *5 (Kan. App. 2025) (applying these principles and finding reasonable suspicion based on officer's assessment of the visibility of defendant's license plate), *rev. granted* 321 Kan. 793 (2026).

On the objective review of the evidence, we find it entirely possible Jones could see Wood's turn signal illuminate, even if his body camera video did not show it, as part of the body camera's view was blocked by Jones' own hat, especially at the time of the Honda's reported signal and apparent left turn. In addition, the review of Denton's body camera video showed the Honda's right brake lights at one point, but the video did not show a clear view of the Honda's left brake and turn signal lights. But the district court did not rely on the inconclusive videos; instead, it relied on the officer's testimony, found it credible and not inconsistent with the videos, and we cannot and will not reweigh that testimony or assess the officer's credibility.

The evidence sufficiently supports the district court's finding that Jones had a reasonable suspicion to stop Wood. Cf. *State v. Cash*, 313 Kan. 121, 133-34, 483 P.3d 1047 (2021) (affirming Court of Appeals finding that officer had "the minimum level of objective justification required to support a reasonable suspicion" to support extending stop after seeing a Crown Royal bag hanging part-way out of an open safe in the vehicle). But cf. *State v. Carter*, 66 Kan. App. 2d 353, 359-64, 581 P.3d 867 (2025) (finding officer did not have reasonable suspicion of an unsafe lane change under K.S.A. 8-1516[a] or K.S.A. 8-1522[a] in part based on review of video evidence).

We thus affirm Wood's conviction.

II.     *The District Court Erred When Imposing BFAW Fees.*

Wood's final two arguments on appeal challenge fees listed in the journal entry of judgment. First, the parties agree that the journal entry lists a $96.50 Bond Forfeiture Alias Warrant (BFAW) fee, but the district court never referenced this fee at sentencing.

K.S.A. 28-172a sets out the fees that may be assessed in criminal proceedings. Subsection (d) provides: "All other fees and expenses to be assessed as additional court costs shall be approved by the court, unless specifically fixed by statute." K.S.A. 28-172a(d).

Our Supreme Court has interpreted this provision as requiring that "docket fees and other costs that are specifically fixed by statute must be taxed against the defendant, but that other fees to be assessed as court costs need to be approved by the district court before they are taxed." *State v. Alvarez*, 309 Kan. 203, 208, 432 P.3d 1015 (2019).

The district court imposed these fees without any mention of them in the record. They appeared for the first time in the journal entry. The State concedes—so, the parties agree—that K.S.A. 22-3801(a) and K.S.A. 28-172a control and the district court did not make necessary findings to impose the fees.

Another panel of this court recently addressed the same issue. See *State v. Van Royen*, No. 128,853, 2026 WL 787673, *2 (Kan. App. 2026) (unpublished opinion). There, the district court made no mention at sentencing of witness fees or BFAW fees, yet the journal entry imposed both types of fees. Our court found that "although docket fees and other costs specifically fixed by statute are mandatory, other fees and costs may be assessed at the district court's discretion only so long as the district court first finds that those costs bear a reasonable relation to the defendant's prosecution." 2026 WL 787673, *1 (citing *Alvarez*, 309 Kan. at 208). Because the district court failed to make

10

proper findings that would allow it to impose those fees, our court vacated the witness and BFAW fees and remanded the case with instructions to the district court to make the necessary on-record findings. 2026 WL 787673, *2. We likewise adopt the same approach.

As a result, we vacate the imposition of the $96.50 BFAW fee and remand this case with instructions for the district court, if it intends to assess this fee, to make on-record findings regarding whether the fee bears a reasonable relation to the prosecution before imposing the same.

III.    *The District Court Erred by Imposing BIDS Attorney Fees.*

Finally, the parties also agree that the district court's order of a Board of Indigents' Defense Services (BIDS) application fee should be corrected. Although the district court clearly waived the BIDS application fee on the record during the sentencing hearing, the journal entry reflects the imposition of a $100 BIDS application fee.

The district court's oral pronouncement controls over a variance in the journal entry. *State v. Edwards*, 309 Kan. 830, 835, 440 P.3d 557 (2019). As a result, we direct the district court to correct the clerical error in the journal entry to remove the BIDS application fee. See K.S.A. 22-3504(b).

Affirmed in part, vacated in part, and remanded with directions.